461 So.2d 67 (1984)
Allen Lee DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 63374.
Supreme Court of Florida.
October 4, 1984.
Rehearing Denied January 17, 1985.
*68 Steven L. Bolotin, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Andrew Thomas, Asst. Atty. Gen., Tallahassee, and Kathryn L. Sands, Asst. Atty. Gen., Jacksonville, for appellee.
PER CURIAM.
Allen Davis appeals his convictions of murder and sentences of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm the convictions and sentences.
The state charged Davis with three counts of first-degree murder for the shooting/beating deaths of a woman and her five- and ten-year-old daughters in their home. The jury convicted him as charged and recommended the death penalty for each conviction. The trial court agreed with the jury's recommendation and imposed three death sentences.
On appeal Davis claims: (a) the trial judge abused his discretion (1) by failing to grant a motion for change of venue, (2) by denying a motion for individual and sequestered voir dire, and (3) by denying a motion for mistrial based on a witness' testimony on redirect examination; (b) the trial judge erred in denying Davis' challenge for cause of one prospective juror; and (c) the prosecutor's closing argument rendered the penalty proceeding fundamentally unfair. After considering these points, we find that no relief is warranted. Moreover, our review of the record reveals that competent, substantial evidence supports the convictions *69 and that the death sentences are appropriate.
These murders occurred on May 11, 1982, the police arrested Davis on May 13, and a grand jury indicted him on May 27. On August 11, 1982 Davis filed a motion for change of venue, alleging that the case had received such extensive publicity that he could not receive a fair trial in Duval County. After a hearing on August 17, the trial judge deferred ruling on that motion until an attempt to select a jury had been made.[1] Jury selection subsequently began on January 31, 1983, with the trial lasting from February 1 through February 4.
Davis now claims that the trial judge's failure to grant the motion for change of venue constituted an abuse of discretion. An application for change of venue is addressed to a court's sound discretion, and a trial court's ruling will not be reversed absent a palpable abuse of discretion. Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); Manning v. State, 378 So.2d 274 (Fla. 1979). We find no such abuse here.
In Manning this Court reiterated the test for changing venue as set out in McCaskill v. State, 344 So.2d 1276 (Fla. 1977). The Court went on to explain that in applying that test
a determination must be made as to whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.
378 So.2d at 276. The trial court ruled that Davis did not meet this test, and we agree.
At the hearing Davis presented evidence detailing media coverage of the case. According to this evidence, the bulk of the publicity on the case appeared from mid May through early June 1982 with sporadic coverage after that. By the time for jury selection almost nine months had passed since the murders. Of the forty-some prospective jurors called several acknowledged having heard or read something concerning the case. Either the defense or the state used peremptory challenges to excuse some of these prospective jurors, but the final jury panel contained several persons who had some prior knowledge of the case. All who served on the jury, however, indicated affirmatively that any prior knowledge could be put aside, that they could serve with open minds, and that they could reach a verdict based on the law and the evidence presented at trial.
Media coverage and publicity are only to be expected when murder is committed. The critical question to be resolved, however, is not whether the prospective jurors possessed any knowledge of the case, but, rather, whether the knowledge they possessed created prejudice against Davis. Straight. Davis has not shown a community "so pervasively exposed to the circumstances of the incident that prejudice, bias, and preconceived opinions are the natural result." Manning, 378 So.2d at 276. Moreover, following jury selection, Davis' attorney announced that he had consulted with Davis during the jury selection and that both he and Davis were satisfied with the jury selection even though they had one peremptory challenge left. On the facts presented here we find that the trial court did not abuse its discretion by failing to grant the motion for change of venue.
Davis also claims that the trial court erred by failing to conduct individual and sequestered voir dire of the prospective jurors as requested by the defense. The granting of individual and sequestered voir dire is within the trial court's discretion. Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980); Jones v. State, 343 So.2d 921 (Fla. 3d DCA), cert. denied, 352 So.2d 172 (Fla. 1977). The purpose of *70 conducting voir dire is to secure an impartial jury. Lewis v. State, 377 So.2d 640 (Fla. 1979). Davis has demonstrated neither the partiality of his jury nor an abuse of discretion by the trial court, and we find no merit to this claim.
As his last point dealing with the jury, Davis argues that the trial court erred by not excusing a certain prospective juror for cause. The competency of a challenged juror is a mixed question of law and fact, the determination of which is within the trial court's discretion. Christopher v. State, 407 So.2d 198 (Fla. 1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982). Manifest error must be shown before a trial court's ruling will be disturbed on appeal. Id. "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla. 1984). The prospective juror in question met that test. When the defense challenged her for cause the court pointed out that "the last time you inquired of her, she said that she could listen to all of the evidence and render a verdict based on that, so I will deny your motion."
Prospective jurors are frequently ambivalent, and their answers, as well as the questions asked of them, are, sometimes, not models of clarity. In such instances, as here, it can be argued that the words on the cold record have several meanings and are subject to several interpretations. It is of great assistance to an appellate court if a trial court states on the record the reasons for granting or not granting a challenge for cause, and we encourage trial courts to do so.
At trial the state called Davis' father to testify about a pistol missing from his home. The following exchange between the prosecutor and the witness occurred:
Q [Mr. Austin] While  did Allen subsequently leave with the police to go to the police station?
A [Donald Davis] Yes.
Q Do you know whether he did that freely and voluntarily or not?
A Yes, he did.
Q He did?
A I heard him tell [Detective] Kessinger, "Let's go take a lie detector test and get it over with."
Defense counsel then objected to the mention of a polygraph examination as being highly prejudicial and moved for a mistrial. After discussion, the trial court denied the motion and stated: "I don't think there is any prejudice. It was mentioned. There is no evidence that [a polygraph examination] was given and no evidence that there is [sic] any results." The court then directed the jury to disregard the witness' reference to a lie detector. Davis now claims that the trial court erred in denying his motion for a mistrial.
Unless both sides consent, the results of polygraph examinations are inadmissible in adversarial proceedings. Walsh v. State, 418 So.2d 1000 (Fla. 1982). Here, however, neither party sought to have any such results introduced. The mere mention of the possibility of a polygraph examination does not compel the granting of a new trial. See Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). The trial court's cautionary instruction to the jury cured any problem with this witness' inadvertent reference to a polygraph examination, and we find no error on this point.
As his final point on appeal, Davis contends that the prosecutor's argument to the jury during the penalty phase rendered those proceedings fundamentally unfair. After the jury charge, defense counsel objected to one of the prosecutor's remarks, an alleged "golden rule" comment. The court overruled the objection, finding that the manner and context of the remark did not constitute a "golden rule" argument. We agree. The control of comments in closing arguments is within a trial court's discretion, and a court's ruling will not be overturned unless a clear abuse is shown. Teffeteller v. State, 439 So.2d 840 (Fla. *71 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). No such showing has been made here.
Defense counsel did not object to the other comments complained about on appeal. In the absence of fundamental error the failure to object precludes consideration of this point on appeal. Bassett v. State, 449 So.2d 803 (Fla. 1984); Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Davis now claims that the comments constituted fundamental error. This simply is not correct. The comments had no significant impact on the jury's recommendation or the sentence imposed. They did not go to the foundation of the conviction or sentence.
Even if this prosecutor's argument had been objected to there was no reversible error committed by the argument. In State v. Murray, 443 So.2d 955, 956 (Fla. 1984), we stated that "prosecutorial error alone does not warrant automatic reversal ... unless the errors involved are so basic to a fair trial that they can never be treated as harmless." We went on to hold that the error must be so prejudicial as to taint the entire trial as judged by the harmless error rule from Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[2] Wide latitude is permitted in arguing to a jury. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 1060, 103 S.Ct. 482, 74 L.Ed.2d 627 (1982). In this case the prosecutor strongly urged the jury to recommend the death penalty, but we do not find that he went overboard. Our review of the record discloses that the prosecutor restricted his argument to evidence in the record and to reasonable comments on that evidence. This case is factually distinguishable from Hance v. Zant, 696 F.2d 940 (11th Cir.), cert. denied, ___ U.S. ___, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), on which Davis relies. As the prosecutor pointed out, the killing of a woman and her two young children in their home is a terrible crime, and the proof against Davis was substantial. We therefore find no merit to this point.
In his sentencing order the trial court found five aggravating factors (under sentence of imprisonment; previous conviction of violent felony; committed during course of a burglary; heinous, atrocious, or cruel; and cold, calculated, and premeditated) applicable to all three counts of the indictment plus one additional factor (avoid or prevent arrest) applicable to the younger daughter's death. The trial court found nothing in mitigation.
Davis' appellate attorney has not challenged the death sentences. In response to a question asked at oral argument he stated that he had made a tactical decision not to do so and gave several reasons for his decision. First, he said that, in all candor, only the cold, calculated, and premeditated and avoid or prevent arrest aggravating circumstances could be argued against. Moreover, because no mitigating circumstances existed and because the jury had recommended the death sentence, the sentence could be sustained even if this Court found those aggravating circumstances improper. Elledge v. State, 346 So.2d 998 (Fla. 1977). Finally, defense counsel stated that, taking the above into consideration, he had decided to use his brief to attack the convictions rather than the sentences, even though he disagrees with the sentences.
Section 921.141, Florida Statutes, however, directs this Court to review both the conviction and sentence in a death case, and we will do so here on our own motion. Our review convinces us that all but one aggravating circumstance, avoid or prevent arrest, are supported by the record and that the trial court properly applied them to Davis. Davis had been convicted previously of several counts of robbery, attempted robbery, and use of a firearm during commission of a felony. At the time of these murders Davis was on parole from a fifteen-year prison sentence. Additionally, the person who had dropped Davis off so *72 that he could commit a burglary stated that when he picked Davis up again Davis had in his possession a camera of the same make as one belonging to the family of the victims which the victims' husband and father reported as missing after their deaths. The manner and method of these murders supports the finding of heinous, atrocious, or cruel  the mother had been beaten over the head with a pistol almost beyond recognition, one child was tied up and then shot twice, and the second child was shot once in the back and then beaten, all of which occurred in the mother's bedroom and the short hallway to that bedroom. See Breedlove v. State. The state's evidence is also sufficient to support the court's finding of cold, calculated, and premeditated in aggravation. Compare Harris v. State, 438 So.2d 787 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984) (no evidence of planning, instruments of death all from victim's premises) with the instant case (entering home armed with pistol and with rope used to bind one of the victims). We do not find, however, that the evidence meets the standard of Riley v. State, 366 So.2d 19 (Fla. 1978), and Menendez v. State, 368 So.2d 1278 (Fla. 1979), and we therefore strike the court's finding of avoid or prevent arrest in aggravation of the younger child's murder.
In the sentencing order the trial court stated: "The Court finds that there are no statutory mitigating factors existent in this cause... ." The mitigating evidence was not restricted to that listed in section 921.141, however, and we find the court's failure to mention nonstatutory mitigating evidence to be merely inartful drafting of the sentencing order.
Striking one of the aggravating circumstances leaves five valid ones for each count, with nothing in mitigation. We therefore affirm both the convictions and the sentences of death.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in result only with the conviction and concurs with the sentence.
NOTES
[1] A trial court may wait to decide whether to grant a change of venue until after an attempt to seat a jury is made. Manning v. State, 378 So.2d 274 (Fla. 1979).
[2] In Chapman the Court held that a reviewing "court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828.