No. 84–6520. DAVIS *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Petitioner was charged with the brutal beating and shooting of a woman and her two young daughters in Duval County, Florida. The murders and petitioner's arrest were the subject of enormous pretrial publicity in the Duval County area. The major local newspapers carried numerous stories on the crime and the details of petitioner's arrest, and many minutes of prime-time news coverage were devoted to the subject. Among the specific and prejudicial facts disclosed by this pretrial publicity were that petitioner had failed a lie detector test, that he had a history of violent crime, that he was on parole at the time of his arrest, that he had admitted being in the victim's home around the time of the murders, and that particular pieces of evidence appeared to link petitioner to the crimes.

Based on the substantial showing of prejudicial pretrial publicity he had made, petitioner moved for a change of venue. Attached to this motion were affidavits from 15 Duval County attorneys who believed the extent and nature of the pretrial publicity would make it impossible for petitioner to receive a fair and impartial jury in Duval County. Petitioner also moved for individual and sequestered *voir dire,* and the trial judge deferred ruling on the change-of-venue motion until after *voir dire* was completed. During *voir dire,* at least 10 of the 40 veniremen admitted having prior knowledge about the case. The trial judge, however, re-

fused to allow these jurors to be questioned individually and, as a result, defense counsel was precluded from learning the specific information they had heard or read. To have pursued such a line of questioning in front of the entire jury pool undoubtedly would have contaminated the remainder of the venire. After the group *voir dire*, the trial court denied the change-of-venue motion. Four of the veniremen who admitted to prior knowledge of the case ultimately sat on the jury that convicted petitioner and sentenced him to death.

Petitioner argues that the refusal to grant individual *voir dire* in the circumstances of this case violated his Sixth Amendment right to a fair and impartial jury. I recognize that "exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged [does not] alone presumptively depriv[e] the defendant of due process." *Murphy* v. *Florida*, 421 U. S. 794, 799 (1975). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin* v. *Dowd*, 366 U. S. 717, 723 (1961). The question here, however, is not whether the jury actually was biased against petitioner, but whether he was unconstitutionally deprived of the opportunity to uncover such bias and to exercise his for-cause challenges to root it out. The right to an impartial jury encompasses the right to take reasonable steps designed to insure that the jury is impartial. See, *e. g., Groppi* v. *Wisconsin*, 400 U. S. 505 (1971); *Sheppard* v. *Maxwell*, 384 U. S. 333 (1966); *Aldridge* v. *United States*, 283 U. S. 308 (1931); see also *Ham* v. *South Carolina*, 409 U. S. 524, 532 (1973) (opinion of MARSHALL, J.). Moreover, the informed exercise of jury challenges is an essential element in insuring jury impartiality. Indeed, the first Justice Harlan, speaking for a unanimous Court, called the right to challenge "one of the most important of the rights secured to the accused" and concluded that "[a]ny system for the empanelling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned." *Pointer* v. *United States*, 151 U. S. 396, 408 (1894); see also *Lewis* v. *United States*, 146 U. S. 370, 376 (1892); *Johnson* v. *Louisiana*, 406 U. S. 356, 379 (1972) (opinion of POWELL, J.).

This Court has not addressed whether, and upon what threshold showing, individual *voir dire* is constitutionally required to guarantee a defendant's right to "have sufficient information brought out on voir dire to enable him to exercise his challenges in a rea-

sonably intelligent manner." *United States* v. *Rucker*, 557 F. 2d 1046, 1048 (CA4 1977). Members of the Court, however, have urged that individual *voir dire* may be required to ferret out the damaging effect of pretrial publicity. *Nebraska Press Assn.* v. *Stuart*, 427 U. S. 539, 602 (1976) (BRENNAN, J., concurring in judgment). Moreover, lower courts have concluded that this practice is constitutionally required under circumstances similar to those presented here. In *United States* v. *Davis*, 583 F. 2d 190, 196 (CA5 1978), the court held that "where the nature of the publicity as a whole raised a significant possibility of prejudice," due process required more than general questions to the venire as a group regarding their ability to render an impartial verdict. The court found the extensive pretrial publicity potentially prejudicial on the basis of the "sensational nature of some of the reports" and disclosure of the arrest and conviction records of the defendants. *Ibid.* See also *United States* v. *Hawkins*, 658 F. 2d 279 (CA5 1981). Similarly, the Louisiana Supreme Court, apparently relying on the Federal Constitution, see *Michigan* v. *Long*, 463 U. S. 1032 (1983), ordered individual *voir dire* when pretrial publicity had disclosed the defendant's confession and had linked him to a series of highly publicized crimes. See generally ABA Standards for Criminal Justice 8–3.5 (2d ed. 1980) (recommending individual *voir dire* when substantial possibility that potentially prejudicial material will make jurors ineligible to serve).

In this case, there can be little doubt of the extensive publicity the triple murder and petitioner's arrest received. Much of this information was prejudicial. Four members of the petit jury acknowledged their exposure to at least some of this material, but because the trial judge denied individual *voir dire*, defense counsel was effectively precluded from learning the nature of their pretrial knowledge or its potential effect on their impartiality, and from intelligently exercising his challenges. Apparently viewing petitioner's constitutional claim as one of state law only, the State Supreme Court concluded in a short paragraph that the refusal to grant individual *voir dire* was not an "abuse of discretion."* 461 So. 2d 67, 69 (1984). Trial judges certainly have broad discretion

---

*The state court noted that, once the jury had been selected, petitioner was "satisfied" with it. 461 So. 2d 67, 69 (1984). This statement was made in the context of rejecting petitioner's appeal from the denial of his venue motion; after rejecting this venue challenge, the state court went on to address the merits of the asserted right to individual *voir dire*.

over the structuring of *voir dire*, but as federal and state courts have recognized, the extent and nature of pretrial publicity may necessitate individual *voir dire* to assure fair process in the selection of an impartial jury. In light of petitioner's substantial showing in the trial court of the need for individual *voir dire*, I would grant certiorari to address whether, and upon what showing, the Constitution requires trial judges to grant individual *voir dire*.