498 So.2d 406 (1986)
Andrea Hicks JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 64973.
Supreme Court of Florida.
November 13, 1986.
Rehearing Denied January 5, 1987.
*408 Michael E. Allen, Public Defender, Second Judicial Circuit, and Glenna Joyce Reeves, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Henri C. Cawthon, Asst. Atty. Gen., Tallahassee, for appellee.
BOYD, Justice.
Andrea Hicks Jackson appeals her conviction and death sentence for the first-degree murder of Jacksonville police officer Gary Bevel. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and we affirm the conviction and sentence.
Late in the evening of May 16, 1983, appellant vandalized her own automobile, breaking out the windows and removing the car's battery, spare tire and license plate. Police were notified by area residents *409 who observed her actions. After officers Griffin and Bevel arrived separately appellant told them that someone had destroyed the windows of her car and, upon the officers' request, went to an apartment to obtain the car's bill of sale. At this point officer Griffin left Bevel to write a criminal mischief report and upon receiving appellant's permission Bevel had the car towed.
Bevel then spoke to witnesses who stated that appellant had in fact destroyed her own car. He arrested her, apparently for filing a false report. Appellant's response was to kick, scream and strike the officer as he restrained her and placed her in the back of his patrol car. Once in the back seat appellant said, "Wait a minute. You made me drop my damned keys." As officer Bevel stepped back and bent down, apparently looking for the keys, appellant shot him six times, four times in the head, once in the shoulder and once in the back. Bevel fell into her lap and she pushed him aside and ran from the area. Several hours later she was arrested while hiding on the steps outside her ex-husband's apartment. Inside the apartment police found the handgun used to kill Bevel hidden in a clothes basket.
A jury found appellant guilty of first-degree murder and recommended the death penalty. The trial judge imposed the death sentence, finding three aggravating factors: that the murder was committed for the purpose of avoiding a lawful arrest, section 921.141(5)(e), Florida Statutes (1983); that the murder was committed to hinder law enforcement, section 921.141(5)(g); and that the murder was cold, calculated and premeditated, section 921.141(5)(i). Although both statutory and nonstatutory mitigating factors were presented to the jury and considered by the court, none were found to be applicable.
Appellant asserts twelve errors in seeking reversal of her conviction and sentence. First she argues that the trial judge erred in not dismissing the indictment against her on the grounds that discrimination against blacks and women in the selection of grand jury foremen empaneled in Duval County violated her fifth, sixth and fourteenth amendment rights under the United States Constitution. As appellant concedes in her brief, this issue has been decided against her on testimony quite similar to what was presented in this case. Andrews v. State, 443 So.2d 78 (Fla. 1983). See also Hobby v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984).
Prior to trial, appellant filed a motion in limine to preclude group questioning of prospective jurors concerning their attitudes toward capital punishment and a motion for individual and sequestered voir dire. Appellant argues that the trial court's denial of both motions violated her right to be tried by an impartial jury. However, "[t]he granting of individual and sequestered voir dire is within the trial court's discretion." Davis v. State, 461 So.2d 67, 69, (Fla. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). Appellant has failed to demonstrate any abuse of discretion.
Appellant's next claim is somewhat more complex. Following the shooting she went to Shirley Ann Freeman's home and washed her clothes. She told Ms. Freeman that she had shot a cop because she "wasn't going back to jail" and she didn't like men touching her. While at Freeman's house, appellant had in her possession a .22 calibre handgun and when she left she took the gun with her.
After listening to appellant's story Ms. Freeman called a cab and gave appellant money for the cab fare. Taxicab driver Carl Lee, Jr., picked her up from the Freeman home and during the ensuing ride Mr. Lee discovered the gun on appellant, struggled with her and threw the gun from the car. It was also alleged that appellant exited the cab, retrieved the gun and shot at the back window of the cab. Appellant was later charged with the attempted first-degree murder of Mr. Lee. In a separate trial held before the trial of the present case she was acquitted of that charge. However, during appellant's trial for Gary Bevel's murder the trial court allowed *410 Lee's testimony that he picked up appellant at Ms. Freeman's house, that they struggled over the gun and that he threw the gun from the cab. No testimony was allowed concerning the alleged shooting or concerning the facts of the alleged crime of which appellant was acquitted.
Appellant asserts that Mr. Lee's testimony was inadmissible as evidence of a collateral crime of which she had been acquitted, and that admission of this testimony violated the fifth and fourteenth amendments to the United States Constitution. See State v. Perkins, 349 So.2d 161 (Fla. 1977). However, appellant misapprehends the nature of Mr. Lee's testimony. The testimony was admitted for the purposes of showing consciousness of guilt concerning Bevel's murder, flight, and possession of the murder weapon. It was not admitted to expose a collateral crime and was in fact not evidence of a collateral crime at all. Although this testimony had been introduced at appellant's trial for attempted first-degree murder, it had not been introduced to establish any element of the crime charged. The trial judge here was careful to limit the scope of Lee's testimony to those facts not contested in the original trial, facts that merely placed appellant in Lee's cab, with a handgun, possibly in the process of flight from Bevel's murder.
Appellant also claims prejudicial error in allowing Ms. Freeman to testify concerning appellant's statement that "she wasn't going back to jail." Appellant cites Jackson v. State, 451 So.2d 458 (Fla. 1984), to support her position that Ms. Freeman's testimony was inadmissible as a comment implying past criminal conduct. Reliance on Jackson is misplaced. In that case testimony was admitted that the defendant had boasted of being a "thoroughbred killer" from Detroit. The statement had no relevance except as to the character and propensity of the defendant to commit the murder charged. In this case, Ms. Freeman's testimony was relevant to prove appellant's motive for killing Gary Bevel and therefore its admission was proper.
Appellant also challenges the sufficiency of the evidence to support a conviction for first-degree murder. This argument has no merit. After reviewing the record we conclude that the evidence was sufficient to prove premeditation. Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Moreover, even without the evidence of premeditation, the jury could have found felony murder based on the commission of the crime of escape. See State v. Ramsey, 475 So.2d 671 (Fla. 1985) (attempting to flee following arrest is escape).
During the conviction phase of the trial, over defense objection, the jury was instructed on self defense and justifiable use of deadly force. Appellant asserts that because self defense was not raised as an affirmative defense, giving the instruction led the jury to believe that she had failed to prove the defense, depriving her of the presumption of innocence guaranteed under the fourteenth amendment. However, as noted by the trial judge, there was evidence before the jury from which they could have inferred the excuse of self defense: the disparity in size between appellant and Bevel, comments during the struggle to the effect that Bevel might be hurting appellant, and scratches and welts on appellant's back noticed by Shirley Freeman following the shooting. From our review of the record the state was entitled to the instruction; in any event appellant has demonstrated no prejudice.
Appellant also takes issue with comments made by the prosecutor in both the conviction and guilt phases of the trial. Appellant argues that the egregious prosecutorial misconduct so infected the proceedings as to deny her due process of law and to deprive her of the constitutional rights to a fair trial and to an impartial jury.
On several occasions this Court has admonished attorneys concerning the propriety of arguments in capital cases. See, e.g., Bertolotti v. State, 476 So.2d 130, 133-34 (Fla. 1985); Jennings v. State, 453 So.2d 1109 (Fla. 1984), vacated on other *411 grounds, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985); Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). We have gone so far as to warn counsel that such misconduct may form the basis for disciplinary proceedings by The Florida Bar. Bertolotti. We note that the state attorney who prosecuted this case is a man of extensive experience who should be sensitive to the ethical restrictions governing the conduct of state prosecutors. The kind of argument complained of here is not such as this Court can approve. The comments shown in the record are not an appropriate model for young lawyers. However, after a complete review of the record we cannot say that the comments are so offensive as to warrant a new trial. As we stated in Davis v. State, 461 So.2d 67, 70 (Fla. 1984), "[t]he control of comments in closing arguments is within a trial court's discretion, and a court's ruling will not be overturned unless a clear abuse is shown." The trial judge is in the best position to monitor the conduct of lawyers in the courtroom and the record shows that Judge Moran made continuing efforts to ensure that appellant was given a fair trial. Further, as in Valle v. State, 474 So.2d 796, 805 (Fla. 1985), vacated on other grounds, Valle v. Florida, ___ U.S. ___, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986), there is nothing to indicate that the trial judge relied on any of the prosecutor's comments in making his sentencing decision.
In sentencing appellant to death, the trial judge found three aggravating factors to apply. Appellant argues that application of both subsection 921.141(5)(e) (committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody) and subsection (5)(g) (committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws) constitutes impermissible double consideration of an aggravating factor. We must agree. While it can be said that appellant shot officer Bevel in order to escape custody under subsection (5)(e), to say that she shot him to hinder law enforcement requires an examination of what law enforcement activity she sought to disrupt. In this case that activity was to arrest her; therefore, the same aspect of the offense is being used to justify both factors. Sims v. State, 444 So.2d 922 (Fla. 1983), cert. denied, 467 U.S. 1246, 104 S.Ct. 3525, 82 L.Ed.2d 832 (1984); Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); Clark v. State, 379 So.2d 97 (Fla. 1979), cert. denied, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981). Contra Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982). We agree with the state, however, that consolidation of these two aggravating factors does not render the sentence invalid, in that our sentencing statute requires a weighing rather than a mere tabulation of factors in aggravation and mitigation. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974); see also Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979).
During the sentencing phase of the trial the state introduced the testimony of Sheriff Dale Carson to prove that appellant killed Gary Bevel for the purpose of hindering law enforcement. Sheriff Carson's testimony, although relevant to show the effect Gary Bevel's death had on Jacksonville's police force and the resulting disruption of normal police activities, did not prove that appellant killed Bevel in order to achieve that result. Appellant argues that inasmuch as Carson's testimony does not establish one of the statutory aggravating factors, its admission mandates a new penalty hearing with a new jury. We disagree. Because Carson's testimony was presented to prove disruption of law enforcement which we have consolidated with the aggravating factor of avoiding arrest, its admission was at most harmless error. Also, as we have held in the past when there has been a "doubling" of factors, in *412 the absence of credible factors in mitigation, the death sentence remains the appropriate penalty. Sims; Francois; White; Clark; Elledge v. State, 346 So.2d 998 (Fla. 1977).
Appellant also challenges the court's finding of subsection (5)(i), that the murder was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification, stating that in this case the facts simply do not justify the finding. We agree with the conclusions of the trial court:
The evidence indicates this defendant was armed throughout this entire event or armed herself when she went to her home to obtain the papers relating to the car. It further indicates that when she produced the pistol on the unsuspecting officer, she made no attempt to disarm him or escape without the necessity of deadly force, but decided to shoot six (6) times at point blank range into his body. This decision was as coldly and premeditatively done as was her removal of the battery, spare tire and license plate from the just damaged car. For this, there can be no moral or legal justification.
Further, we point out that appellant had the presence of mind while struggling with the victim to devise a method to catch him off guard, i.e., the statement that she had dropped her keys. This record does not show a woman panicking in a frightening situation, but rather a woman determined not to be imprisoned who fashioned her opportunity to escape and then acted accordingly. We see no error.
Appellant also argues that the trial court restricted the scope of mitigating circumstances in violation of the eighth and fourteenth amendments of the federal constitution. Specifically, she contests the prosecutor's statements during voir dire that appellant's sex should not influence the jurors' decision and the trial court's prohibition of testimony before the jury by the victim's brother, Reverend Jesse Bevel. She points to the United States Supreme Court's decision in Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), that
the sentencer ... [may] not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.
(Emphasis in original.) See also Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982). Also, in support of her objection to the prosecutor's statement regarding her sex, she cites this Court's decision in Jacobs v. State, 396 So.2d 713 (Fla. 1981).
Appellant's argument has no merit. First, as explained by the trial judge at the time, in choosing a jury it was proper for the prosecutor to determine whether a verdict of guilt or innocence would be returned on the evidence or upon the fact that appellant is a woman. Although the word "mitigating" was used, it is clear from the record that the state attorney was not using the term to refer to mitigating factors in the penalty phase. Rather it was used to ensure that the jurors were able to render a verdict based solely on the evidence. Second, Lockett and Eddings require that any aspect of a defendant's character or record be considered in mitigation. Appellant's sex sheds light on neither subject. In fact, as we stated in State v. Dixon,
Review by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case. No longer will one man die and another live on the basis of race, or a woman live and a man die on the basis of sex.

283 So.2d at 10 (emphasis supplied). Finally, reliance on Jacobs v. State is misplaced. In that case the Court held that the defendant should have been able to present evidence concerning her role as a "mother of two children for whom she cared." 396 So.2d at 718. Appellant's sex and her role as a mother are two different things. We note that appellant's mother testified at the sentencing hearing and testified concerning *413 appellant's relationship with her own children, who were living with their father at the time of the homicide. Apparently neither the judge nor the jury were impressed. We find no error.
The defense sought to have Reverend Jesse Bevel, the victim's eldest brother, testify before the jury that the victim's family did not wish appellant to receive the death penalty. Although the jury was not allowed to hear the evidence, a proffer of the testimony was made to the trial judge. In his sentencing order, the judge stated:
The defense produced a witness Reverend Jesse Bevel, brother of the deceased. Reverend Bevel testified that his family sought justice, but not a sentence of death for his brother's killer. The Court did not allow this testimony before the Advisory Jury, but has given it consideration and great weight in reaching its decision. The Court, however would note that the Presentence Investigation received in this case would indicate this attitude as to the sentence is more unique to Reverend Bevel than his entire family and should more properly be considered in relationship to his religious profession and consciously held beliefs in general rather than in particular.
It is clear from a reasoned weighing of the above findings that there exist three statutory aggravating circumstances and only one factor that can be even remotely argued in mitigation.
As our review of the record reveals, the judge, who is the ultimate sentencing authority, considered Reverend Bevel's testimony, meeting the requirements of Eddings and Lockett. We note again that this evidence sheds no light on appellant's character or record, or on the offense itself. We agree with the state that allowing the jury to hear this testimony would have opened the door for the state to show, through testimony of other members of the victim's family, that Reverend Bevel's viewpoint was not necessarily representative. We see no error.
In conclusion, appellant's conviction for first-degree murder is affirmed. There are two valid aggravating factors and a lack of credible mitigating factors. Our review of this case in light of all other capital cases leads us to conclude that death is the appropriate penalty and so the sentence of death is also affirmed.
It is so ordered.
McDONALD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.