644 So.2d 1347 (1994)
Norberto PIETRI, Appellant,
v.
STATE of Florida, Appellee.
No. 75844.
Supreme Court of Florida.
September 29, 1994.
Rehearing Denied November 22, 1994.
*1349 Peter Birch, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Sylvia H. Alonso and Celia A. Terenzio, Asst. Attys. Gen., West Palm Beach, for appellee.
PER CURIAM.
Norberto Pietri, a prisoner under sentence of death, appeals his conviction of first-degree murder and the penalty imposed.[1] We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
We affirm the convictions and death sentence, but vacate the sentences for the noncapital offenses and remand for the preparation of sentencing guidelines scoresheets.
Pietri was convicted of fatally shooting West Palm Beach police officer Brian Chappell in August 1988. The killing occurred after Pietri walked away from a work release center, burglarized a home, and stole a pickup truck. Pietri shot Chappell once in the chest when the officer stopped him after a chase of the stolen truck.
The jury convicted Pietri of first-degree murder and recommended death by a vote of eight to four. The trial judge followed the jury's recommendation and sentenced Pietri to death. In imposing the death penalty, the trial judge found four aggravating factors: (1) the murder was committed by someone under a sentence of imprisonment;[2] (2) the murder was committed while Pietri was fleeing after committing a burglary;[3] (3) the murder was a homicide committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification;[4] and (4) the murder was committed to avoid arrest or to escape, the murder was committed to disrupt or hinder the lawful enforcement of laws, and the victim was a law enforcement officer performing his official duties.[5] The trial judge found no statutory or nonstatutory mitigating factors.
*1350 On August 18, 1988, Pietri walked away from the Lantana Community Correctional Work Release Center. At the time, he was restricted to the center's grounds while he awaited transfer to a more secure facility. After his escape, Pietri began a four-day binge of using cocaine. He testified that during this time he committed burglaries to support his drug use. On August 22, he ran out of drugs.
Driving a pickup truck he had stolen the day before, Pietri went to a house, broke in, and stole items including a 9-mm semiautomatic firearm and a .38-caliber revolver. After the burglary, a witness saw Officer Chappell sitting on his motorcycle, apparently watching for speeding motorists. The witness saw a man driving a silver pickup truck speed by Chappell, and the officer gave chase. The driver stopped after about a mile. Chappell motioned for the driver to move forward to avoid blocking traffic, and the driver complied.
Witnesses testified that as Chappell approached the truck, his gun was in its holster. When the officer was within two to four feet of the truck the driver shot him once in the chest. A forensics firearm examiner testified that Chappell was shot from a distance of three to eight feet. He testified that the casing of the bullet that killed Chappell matched the casings of 9-mm bullets provided by the burglary victim. Thus, the firearms examiner concluded, the bullets had been fired from a weapon taken in the burglary.
After firing the gun, the driver sped off, and Chappell radioed that he had been shot. The first officer who arrived at the scene testified that Chappell's gun was still in the holster. The holster had been unsnapped, however, indicating that Chappell may have tried to remove his weapon.
After leaving the scene of the shooting, the driver went to his nephew's house for help disposing of the truck. He dumped the truck in a canal off the Florida Turnpike, and a fingerprint found inside the driver's side window was later identified as Pietri's. Officer Chappell's death prompted an intense search, with Pietri identified as the prime suspect. Pietri stole another car on August 24 and was spotted by police officers near his sister's apartment and later by an off-duty officer at a church. Pietri threatened to shoot the officer, who was not in uniform, and escaped.
Later that same evening, a couple and their five-year-old son were in their car in the driveway of their home. As they prepared to leave, the husband realized he had left something in the house. When he returned to the house, Pietri got in the car and told the wife, "We're leaving, we're leaving." He told the woman, who was in the driver's seat, "Drive, or I'll shoot you." When she hesitated, Pietri pushed her out of the car and began to drive away. He slowed down, however, and let the husband, who had emerged from the house, take their son from the back seat.
Another police officer spotted the couple's car. The driver stopped and waved the officer toward the car. As the officer approached the car with his gun drawn, the driver sped off. Two other officers picked up the chase, which proceeded at speeds of more than 100 miles per hour. Pietri eventually lost control of the car, then jumped out of the car and began running. As Pietri ran, he reached into his pants, pulled out a bag of cocaine, and put it into his mouth. Delray Beach officer Michael Swigert caught Pietri and arrested him.
Pietri testified in his own defense that he is blind in his right eye and that he developed a cocaine addiction which he financed with burglaries. He testified that Chappell stopped him while he was planning to sell stolen goods. Pietri admitted shooting Chappell, but said he had not planned to kill the officer and did not aim for his heart.
Pietri raises twenty issues on this direct appeal.[6]

*1351 I. GUILT PHASE
Two of Pietri's issues in the guilt phase concern jury selection.[7] Pietri first claims that the jury selection process deprived him of a fair trial because the trial judge (1) refused to strike the entire venire when the Clerk of the Court gave an overview of jury trials outside the presence of the trial judge, (2) refused to conduct individual voir dire, and (3) denied his motion for a change of venue.
We find the clerk's speech to the entire venire to be harmless error. State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). The communication occurred at the preliminary stages of trial and did not include any discussion of Pietri's case. The record is clear that when voir dire began in Pietri's case the trial court instructed the jury on general legal principles for criminal cases. Both the State and defense questioned prospective jurors about their ability to be fair and impartial. In addition, the jury was instructed on the burden of proof and the presumption of innocence and had a written copy of the instructions during its deliberations. Thus, the trial judge did not err in refusing to strike the entire venire.
We also find no error in the trial court's refusal to conduct an individual voir dire of what prospective jurors knew about the case. The trial court has the discretion to order individual voir dire. See, e.g., Davis v. State, 461 So.2d 67, 69 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). In addition, the United States Supreme Court has held that a defendant does not have a constitutional right to question potential jurors about exactly what they have read  even when a case generates extensive publicity.[8]Mu'Min v. Virginia, 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). "[I]t is not enough that such questions might be helpful. Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." Id. at 425-26, 111 S.Ct. at 1905. See also Cummings v. Dugger, 862 F.2d 1504, 1508-09 (11th Cir.) (individual examination, while preferred when there is extensive publicity, is not required), cert. denied, 490 U.S. 1111, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989).
We cannot say that the trial court's failure to conduct individual voir dire resulted in a trial that was fundamentally unfair. The trial judge made clear that he wanted to find out whether prospective jurors who had read about the case could set aside that information and make a decision based on the evidence. The record reflects that the trial judge readily excused those prospective jurors who had heard about the case and had formed an opinion. Although several people who served on the jury had read about the case, all said they had not formed an opinion and would consider only the evidence *1352 brought before them. Thus, Pietri has not shown an abuse of discretion that requires reversal.
Pietri also claims that the trial judge erred when he denied his motion for a change of venue. We disagree. A trial court's ruling on a motion for change of venue will not be reversed absent an abuse of discretion. Davis, 461 So.2d at 69. Pretrial publicity alone does not warrant a change of venue. See, e.g., Provenzano v. State, 497 So.2d 1177, 1182 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). The test is
whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely upon the evidence presented in the courtroom.
McCaskill v. State, 344 So.2d 1276, 1278 (Fla. 1977) (quoting Kelley v. State, 212 So.2d 27, 28 (Fla. 2d DCA 1968)). If a juror has knowledge about a case, "[i]t is sufficient if the juror can lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The defendant has the burden to show prejudice. Manning v. State, 378 So.2d 274, 276 (Fla. 1979).
As mentioned, the trial judge excused members of the venire who said they were biased. The jurors who recalled reading about the case and were ultimately chosen to serve all said they could set aside any prior knowledge and decide the case based on evidence presented at trial. Thus, the pretrial knowledge of the jurors who served did not preclude a fair and impartial jury, and the trial judge did not abuse his discretion in denying the motion for a change of venue.
Pietri's next jury selection issue concerns challenges for cause. This issue has not been preserved. Under our decision in Trotter v. State, 576 So.2d 691, 693 (Fla. 1990), a defendant seeking reversal because he claims he was wrongfully forced to exhaust peremptory challenges must identify a specific juror he otherwise would have struck peremptorily. It is not enough where, as in the instant case, the trial judge denies defense counsel's general request for additional peremptory challenges. When all jurors had been selected, defense counsel renewed his motion for additional peremptory challenges and argued that all jurors chosen were unacceptable. This does not satisfy Trotter. Defense counsel did not identify a specific juror he would have struck if granted additional peremptory challenges. Although Pietri had been denied challenges for cause for several jurors, he did not specifically identify those jurors as ones on whom he would have exercised peremptory challenges. Thus, this issue has not been preserved for our review.
Turning to another guilt-phase issue, Pietri argues that the trial court should have granted his motion for acquittal or reduced the charges from first- to second-degree murder. The State prosecuted under a theory of premeditated murder and specifically stipulated that it would not prosecute under a felony-murder theory. The State's case was based on circumstantial evidence. In such cases, "a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." State v. Law, 559 So.2d 187, 188 (Fla. 1989). The jury determines whether the evidence fails to exclude all reasonable hypotheses of innocence. Id. Although Pietri testified that he shot Chappell but did not intend to kill him, the jury is not required to believe a defendant's testimony. See Cochran v. State, 547 So.2d 928, 930 (Fla. 1989). The evidence showed that Pietri shot Chappell after the officer stopped him for speeding. The owner of the gun that Pietri used to kill Chappell testified that the procedure to shoot the gun required the use of both hands and removing the gun from the holster. The officer was shot in the heart from a close distance. Pietri drove away after the shooting and later disposed of the truck. Thus, reversal is not warranted because there is sufficient evidence from which the *1353 jury could have inferred premeditation to the exclusion of all other possible inferences.[9]
The other issues that Pietri raises concerning the guilt phase are either without merit or procedurally barred.[10] We therefore affirm Pietri's conviction of first-degree murder.

II. PENALTY PHASE
Pietri claims the trial court should have excused juror Howard Carroll for cause because he said during voir dire that he would automatically vote for the death penalty if there was a verdict of first-degree murder with a police officer as a victim. The defense challenged Carroll for cause specifically because of his views on the death penalty and renewed that motion before the penalty phase began. After Pietri's counsel initially challenged Carroll, the judge explained the system of aggravating and mitigating factors, and Carroll said he could weigh those factors in making a sentencing recommendation.
Pietri's counsel challenged Carroll for cause because of his views on the death penalty. But when he sought additional peremptory challenges, he failed to identify Carroll as a juror he would have struck peremptorily. Thus, this issue has not been preserved for our review. See Trotter, 576 So.2d at 693. The fact that Pietri again challenged Carroll for cause before the penalty phase does not preserve this issue.
Next, we agree with Pietri that the trial court erred in finding the aggravating circumstance of a cold, calculated, and premeditated murder. This Court uses the phrase "heightened premeditation" to distinguish CCP from the premeditation element of first-degree murder. Jackson v. State, 1994 WL 137914, 19 Fla. L. Weekly S215, S216 (Fla. Apr. 21, 1994). "Calculation" constitutes a careful plan or prearranged design. Id. While the record supports a finding that the murder was premeditated, it does not show the careful design and heightened premeditation necessary for a murder to be committed in a cold, calculated, and premeditated manner. The fact that this murder occurred after a short chase does not show more premeditation than what is required for first-degree murder.
Although CCP does not apply, three other factors support the death penalty[11] and the trial court found no mitigation. Even if the trial court improperly considered CCP, the error is harmless in view of the *1354 other aggravating circumstances and the absence of mitigating factors. See Parker v. Dugger, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). Thus, our elimination of CCP as an aggravating factor does not warrant reversal of the death penalty.
Next, we find that the trial court did not err in giving the jury a flight instruction.[12] Two years after the trial in this case, this Court held that the flight instruction should no longer be given. Fenelon v. State, 594 So.2d 292, 295 (Fla. 1992). Fenelon is prospective, so it does not apply to the instant case. Id.; see also Taylor v. State, 630 So.2d 1038, 1042 (Fla. 1993), petition for cert. filed (U.S. May 11, 1994) (No. 93-9068).
Before Fenelon a trial court could give the flight instruction "in the limited circumstance where there is significantly more evidence against the defendant than flight standing alone." Whitfield v. State, 452 So.2d 548, 549 (Fla. 1984). The record reflects that flight was not the only evidence against Pietri.
In addition, although Pietri objected to giving the flight instruction, he did not object to the actual evidence that he fled to avoid prosecution. The evidence includes: Pietri's own testimony that he shot Officer Chappell "to get away"; the fact that he immediately enlisted his nephew's aid in disposing of the stolen pickup truck; that he escaped after threatening a non-uniformed police officer; and that he stole another car and led police on another chase. A jury could reasonably draw the inference that Pietri fled to avoid arrest and prosecution. The flight instruction does not, as Pietri argues, bear on his defense that he did not form the requisite intent to kill Chappell.
Next, we find that the death sentence is proportionate in light of the three aggravating factors, the lack of mitigation, and our review of death sentences imposed in other cases. With the elimination of CCP as an aggravating factor, there are three remaining aggravating factors and no mitigation. Striking one aggravating factor where there is no mitigation does not necessarily require resentencing. Sochor v. State, 619 So.2d 285, 291 (Fla. 1993) (death penalty upheld as proportionate after CCP struck where there were three valid aggravators and no mitigators). It is apparent from the sentencing order that the trial judge considered all the evidence and possible mitigating factors. The trial court has broad discretion to determine the applicability of mitigating circumstances, see Kight v. State, 512 So.2d 922, 933 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988), and there was competent substantial evidence to support the trial court's rejection of mitigation.[13] Even if the trial court had found mitigators including a deprived childhood, we cannot say there is a reasonable likelihood that the trial court would have imposed a different sentence. See Rogers v. State, 511 So.2d 526, 535 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Any error, therefore, is harmless. DiGuilio, 491 So.2d at 1138.
*1355 Finally, Pietri claims the trial court erred in failing to prepare a guidelines scoresheet when sentencing him for the noncapital offenses, and we agree. No scoresheets were prepared for the noncapital offenses, contrary to the provisions of Florida Rule of Criminal Procedure 3.701(d)(1).[14]See also Holton v. State, 573 So.2d 284, 290-91 (Fla. 1990) (reversing and remanding sentences for noncapital offenses for preparation of scoresheet and consideration by trial judge), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). The State argues that a scoresheet was not required because Pietri stipulated to the sentences. See, e.g., Houston v. State, 502 So.2d 977, 979 (Fla. 1st DCA 1987); Rowe v. State, 496 So.2d 857, 859 (Fla. 2d DCA 1986), review denied, 545 So.2d 1368 (Fla. 1989). The "stipulation" to which the State refers is a letter from the prosecutor to the trial judge listing the maximum sentences possible for the noncapital offenses.[15] This was not an agreement that Pietri would receive the maximum sentence and did not discuss whether Pietri could be sentenced in excess of the guidelines. Thus, we vacate Pietri's sentences for the noncapital offenses and remand for resentencing after a guidelines scoresheet has been prepared and considered by the trial judge.[16]
Accordingly, we affirm Pietri's convictions and death sentence. We vacate his sentences for the noncapital offenses and remand for resentencing after the preparation and consideration of sentencing guidelines scoresheets.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Pietri also appeals his convictions and sentences for numerous noncapital offenses. In addition to first-degree murder, Pietri was charged with fifteen noncapital offenses and convicted of fourteen of those offenses. As part of a stipulation between the State and defense, Pietri was not adjudicated or sentenced for three counts and nolle prossed on one count. He was sentenced to: Count 1 (escape): fifteen years consecutive to any active sentence being served and consecutive to Counts 2-5, 7, 10-12, 14, and 16; Count 2 (burglary): five years concurrent with Count 3 and consecutive to Counts 1, 4, 5, 7, 10-12, 14, and 16; Count 3 (grand theft): five years concurrent with Count 2 and consecutive to Counts 1, 4, 5, 7, 10-12, 14, and 16; Count 4 (armed burglary): life, concurrent with Count 5 and consecutive to Counts 1-3, 7, 10-12, 14, and 16; Count 5 (grand theft): five years concurrent with Count 4 and consecutive to Counts 1-3, 7, 10-12, 14, and 16; Count 10 (burglary): five years concurrent with Count 11 and consecutive to Counts 1-5, 7, 12, 14, and 16; Count 11 (grand theft): five years concurrent with Count 10 and consecutive to Counts 1-5, 7, 12, 14, and 16; Count 12 (robbery): fifteen years concurrent with Count 14 and consecutive to Counts 1-5, 7, 10, 11, and 16; Count 14 (attempted kidnapping): fifteen years concurrent with Count 12 and consecutive to Counts 1-5, 7, 10, 11, and 16; and Count 16 (possession of cocaine): five years consecutive to Counts 1-5, 7, 10-12, and 14. The trial judge imposed the death penalty consecutively to the sentences for the noncapital offenses.
[2] § 921.141(5)(a), Fla. Stat. (1989).
[3] § 921.141(5)(d), Fla. Stat. (1989).
[4] § 921.141(5)(i), Fla. Stat. (1989).
[5] §§ 921.141(5)(e), (g), (j), Fla. Stat. (1989). The trial judge said in his sentencing order that he counted and weighed these three aggravating factors as one.
[6] Whether (1) the jury selection process deprived Pietri of a fair trial; (2) the trial court erred when it denied Pietri's challenges for cause; (3) the trial court's comment on the evidence deprived Pietri of a fair trial; (4) the trial court erred in admitting prejudicial similar fact evidence that had no probative value; (5) the trial court erred in admitting a portrait photograph of the victim; (6) the trial court erred in denying Pietri's motion for judgment of acquittal to first-degree murder and to reduce the charge to second-degree murder; (7) the trial court erred in denying Pietri's requested jury instruction on circumstantial evidence; (8) the trial court committed fundamental error by giving an inaccurate jury instruction on premeditation; (9) the trial court erred in denying Pietri's motion to preclude the State from seeking the death penalty; (10) the trial court erred in denying Pietri's challenge for cause of a juror who would automatically vote for death if someone was convicted of the first-degree murder of a police officer; (11) the trial court improperly found the aggravating circumstance that Pietri was engaged in flight after committing a burglary; (12) the trial court improperly found that the murder was cold, calculated, and premeditated; (13) the trial court erred in instructing the jury on three aggravating circumstances that could only be treated as a single aggravating circumstance; (14) the aggravating circumstance of section 921.141(5)(j) is unconstitutional because it establishes victim status as a factor for imposing the death penalty; (15) the trial court erred in refusing to instruct the jury adequately on mitigating circumstances; (16) Pietri's death sentence is invalid because it is based on a less-than-unanimous jury recommendation; (17) the trial court erred in refusing to instruct the jury that it could recommend a life sentence despite the existence of aggravating circumstances; (18) Pietri's death sentence is disproportionate; (19) the trial court erred in failing to prepare a guidelines scoresheet for the noncapital offenses; and (20) the trial court erred in giving a flight instruction. (Issue 20 was raised in a supplemental brief.)
[7] These are issues 1 and 2.
[8] There were numerous news reports about Chappell's death, which occurred about eighteen months before the trial began. There also were news accounts about a week before jury selection because of a mistrial during the first attempt to choose a jury.
[9] In addition, we reject Pietri's argument in Issue 7 that the trial court erred in refusing to give his requested instruction on circumstantial evidence. We have eliminated the requirement of the circumstantial evidence instruction. In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594, 595 (Fla.), modified on other grounds, 431 So.2d 599 (Fla. 1981). The jury in this case was adequately instructed on reasonable doubt and burden of proof.
[10] There is no merit to Issue 3 because we find the trial court made a proper inquiry to determine whether any juror had overheard a remark the judge made during a bench conference. There is no evidence that jurors heard the remark and "[r]eversible error cannot be predicated on conjecture." Sullivan v. State, 303 So.2d 632, 635 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). We also find no merit to issues 4 and 5.

Issue 8 is procedurally barred because Pietri did not object when the trial court gave the standard jury instruction on premeditation. We have recently upheld the standard instruction, see Spencer v. State, 645 So.2d 377, (Fla. 1994); thus, the trial court did not commit fundamental error.
[11] See supra pp. 1349-50. We find no merit to Pietri's argument in Issue 11 that the State's stipulation that it would not prosecute under a felony murder theory barred the trial court from finding the aggravator that the murder was committed while Pietri was engaged in flight after committing a burglary. We have held that "[t]he state need not charge and convict of felony murder to find the aggravating factor of murder committed during the course of a felony." Occhicone v. State, 570 So.2d 902, 906 (Fla. 1990), cert. denied, 500 U.S. 938, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991). The record reflects support for finding this aggravating factor. We also reject Pietri's argument in Issue 13 that the trial court erred in instructing the jury on three aggravating circumstances that could only be treated as a single aggravating circumstance. See Valle v. State, 581 So.2d 40, 41 & n. 9 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991); Suarez v. State, 481 So.2d 1201, 1209 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986).
[12] The trial judge gave the jury this flight instruction:

The intentional flight or concealment of a Defendant immediately after the commission of a crime or after he is accused of a crime that has been committed is not of course sufficient in itself to establish his guilt. But it is a fact which if proved may be considered by the jury in light of all other evidence in the case in determining guilt or innocence.
Whether or not evidence of flight or concealment shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury.
These may include fear of being apprehended, unwillingness to confront the police or reluctance to appear as a witness. Let me suggest also that a feeling of guilt does not necessarily reflect actual guilt.
[13] Pietri argues that our decision in Campbell v. State, 571 So.2d 415, 419 (Fla. 1990), applies in this case. In Campbell we held that a sentencing court must expressly evaluate in its written order each mitigating factor proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory mitigating factors, the factor is truly mitigating. The trial judge did not expressly evaluate each nonstatutory mitigating factor in the instant case. Campbell was decided after Pietri was sentenced and, as Pietri himself notes, is prospective. Gilliam v. State, 582 So.2d 610, 612 (Fla. 1991).
[14] Florida Rule of Criminal Procedure 3.701(d)(1) provides:

One guideline scoresheet shall be utilized for each defendant covering all offenses pending before the court for sentencing. The state attorney's office will prepare the scoresheets and present them to defense counsel for review as to accuracy in all cases unless the judge directs otherwise. The sentencing judge shall approve all scoresheets.
[15] The relevant passage of the letter says:

As to all other counts, the Court may impose maximum sentence consecutive to other counts, however, counts arising from the same incident should be concurrent with each other. The following should reflect the maximum sentences as to each count:....
[16] We find no merit to the other issues Pietri raises in the penalty phase  Issues 9, 14, 16, and 17. Issue 15 also is without merit because the trial judge instructed the jury that it could consider any issue in mitigation "any aspect of the defendant's character or record and any circumstances of the offense." The trial court also instructed the jury that "[b]ecause the court has not read a list of mitigating circumstances does not prevent you from finding any mitigating circumstances in the case." See Robinson v. State, 574 So.2d 108, 111 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991).