581 So.2d 40 (1991)
Manuel VALLE, Appellant,
v.
STATE of Florida, Appellee.
No. 72328.
Supreme Court of Florida.
May 2, 1991.
Rehearing Denied July 15, 1991.
*42 Louis M. Jepeway, Jr., Miami and Michael A. Mello of Vermont Law School, South Royalton, Vt., for appellant.
Robert A. Butterworth, Atty. Gen. and Richard L. Polin, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Manuel Valle appeals his death sentence for the 1978 murder of Officer Louis Pena. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
This Court originally reversed Valle's conviction and sentence of death on the ground that his counsel had not been given an adequate time to prepare for his defense. Valle v. State, 394 So.2d 1004 (Fla. 1981). Following a retrial, we affirmed Valle's conviction and death sentence. Valle v. State, 474 So.2d 796 (Fla. 1985). Thereafter, upon remand from the United States Supreme Court[1] for further consideration in light of Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), we remanded the case for *43 a new sentencing proceeding. Valle v. State, 502 So.2d 1225 (Fla. 1987).
We detailed the facts of this murder in Valle, 474 So.2d at 798:
On April 2, 1978, Officer Louis Pena of the Coral Gables Police Department was on patrol when he stopped appellant and a companion for a traffic violation. The events that followed were witnessed by Officer Gary Spell, also of the Coral Gables Police Department. Officer Spell testified that when he arrived at the scene, appellant was sitting in the patrol car with Officer Pena. Shortly thereafter, Spell heard Pena use his radio to run a license check on the car appellant was driving. According to Spell, appellant then walked back to his car and reached into it, approached Officer Pena and fired a single shot at him, which resulted in his death. Appellant also fired two shots at Spell and then fled. He was picked up two days later in Deerfield Beach. Following his jury trial, appellant was also found guilty of the attempted first-degree murder of Spell and after a non-jury trial, he was found guilty of possession of a firearm by a convicted felon.
At the resentencing hearing, the jury recommended a sentence of death by an eight-to-four vote. The court then imposed the death penalty, finding in aggravation that: 1) Valle had been previously convicted of another violent felony; 2) the murder was of a law enforcement officer; 3) the murder was for the purpose of preventing lawful arrest; 4) the murder hindered the enforcement of laws; and 5) the murder was cold, calculated, and premeditated.[2] The judge merged factors 2, 3, and 4, treating them as only one aggravating factor. The judge did not find any mitigation.
Valle's first claim on this appeal is that during jury selection the judge failed to hold an adequate inquiry into the state's peremptory challenges of black venire members. He argues that this constitutes reversible error under the principles established in State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), and State v. Neil, 457 So.2d 481 (Fla. 1984). We reject this claim because, as demonstrated in the following facts, Valle failed to preserve the issue for appeal.
After the jury had been selected but before it had been sworn, one of Valle's attorneys claimed "an impropriety in the record" as to the state's use of peremptory challenges against certain jurors. The defense attorney noted that six blacks and two Hispanics were peremptorily excused by the state. The judge then observed that if there was a problem with any particular juror he wanted "the state to be able to respond in whichever manner they wish." One of the prosecutors then asked the judge if he was making a finding that the state had somehow improperly excused jurors. The judge responded, "I've been asked to make no findings and I am making no findings but for record-keeping purposes she has some objection to the state's action and, of course, I'm giving the state an opportunity to respond in time." The state then voluntarily gave its reasons for peremptorily excusing the eight jurors.[3] *44 After the prosecutor finished giving his reasons for exercising the peremptory challenges, the defense attorney stated, "I object on the basis of [Valle's] Sixth, Eighth and 14th amendment rights, to the combination of the challenges for cause, either peremptory challenges leading to a jury that is in favor of the death penalty."
This Court has previously set out the procedure to be followed under these circumstances. There must be an objection that the challenges are being exercised in a racially discriminatory manner. At this point, the judge should determine if there has been a prima facie showing that there is a strong likelihood that the jurors have been challenged because of their race. Neil. If legitimate reasons for the challenges are not apparent from the jurors' statements but there are other reasons why the challenges do not appear to be racially motivated, the judge should note these reasons on the record. If the judge rules that a prima facie showing has been made, the burden shifts to the challenging party to demonstrate valid, nonracial reasons why each minority juror has been stricken. Thompson v. State, 548 So.2d 198 (Fla. 1989). The judge must then evaluate the proffered reasons in deciding whether the objection is well taken.
We believe that under the facts of this case Valle did not properly preserve this issue for appeal. When Valle's attorney first referred to the state's use of peremptory challenges, the judge specifically noted that he had not been asked to make any finding. The defense did not ask the judge to find that it had carried its initial burden of showing that there was a strong likelihood that the jurors were challenged because of their race. After the prosecution volunteered its reasons for challenging the eight jurors, the defense again did not ask the judge to find that it had carried its burden of showing that it was substantially likely that the jurors were challenged because of their race. The only objection that the defense made after the prosecutor gave his reasons for using the peremptory challenges was that the challenges were used to create a jury in favor of the death penalty. This objection certainly cannot be interpreted to preserve the issue of the adequacy of a judge's inquiry under Neil and Slappy.[4]
The next issue Valle raises is whether the trial judge should have allowed the defense to exercise a peremptory challenge after the jury was sworn but prior to any testimony. Florida Rule of Criminal Procedure 3.310 provides that a trial court "may, for good cause, permit [a challenge] to be made after the juror is sworn, but before any evidence is presented." After the jury was sworn in this case, the state learned of information about one of the jurors and promptly advised the defense and the judge. The victim's first wife, who was in the audience, told the prosecutors that she recognized one of the jurors because her employer had borrowed money from him in order to loan it to her approximately one and one-half years prior to the trial. She said she did not believe he recognized her because she looked different at the present time. Valle's attorney sought to exercise a peremptory challenge of this juror. However, the defense declined the judge's offer to ask either the juror, separately, or all of the jurors, generally, if they recognized anyone in the courtroom. The judge did *45 not allow the challenge, finding that the new information did not constitute good cause for a challenge.[5]
Valle argues that the challenge was "for good cause" because the defense did not learn of this information until after the jury was sworn. He argues that the "for good cause" requirement should be interpreted as relating to the point in time that the party seeking to use the challenge discovers the information on which the challenge is based. He essentially argues that a trial court cannot look at the underlying information on which such a challenge is based as long as the information was not available until after the jury was sworn.
We reject this interpretation of rule 3.310. Rule 3.310 vests the trial court with discretion to determine whether the newly discovered information constitutes good cause for a challenge. A trial court certainly may consider the reason for a challenge on its merits when determining whether the challenge is "for good cause." The fact that the information was discovered after the jury was sworn does not of itself constitute good cause as a matter of law under the rule,[6] depriving the trial judge of the discretion to determine whether the new information constitutes good cause.
Valle next claims that the trial judge erred because he allowed the state to retry its entire case as to guilt. We have previously held
that it is within the sound discretion of the trial court during resentencing proceedings to allow the jury to hear or see probative evidence which will aid it in understanding the facts of the case in order that it may render an appropriate advisory sentence. We cannot expect jurors impaneled for capital sentencing proceedings to make wise and reasonable decisions in a vacuum.
Teffeteller v. State, 495 So.2d 744, 745 (Fla. 1986). Further, during resentencing the state must prove the aggravating circumstances beyond a reasonable doubt. King v. State, 514 So.2d 354 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). We find that the trial judge did not abuse his discretion in the amount of evidence he allowed the state to present in this case.
Valle further claims that his prior death sentence became a feature of the resentencing proceeding. At the outset, it should be noted that Valle requested the judge to instruct the jury that he previously had been sentenced to death and that the sentence had been vacated and should be given no weight. Valle requested this instruction because he wanted to present evidence that he had positively adapted to prison life since his conviction. The court gave the requested instruction. Valle now asserts that from the evidence the jury likely inferred that he also had been sentenced to death at an earlier time. We reject this claim. Because Valle opened the door by requesting this instruction and then eliciting testimony concerning his adaptation to prison life, the state was properly allowed to rebut this testimony with evidence of Valle's prison behavior, including his behavior on death row, since his conviction. See Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 1164, 102 S.Ct. 1037, 1039, 71 L.Ed.2d 319, 320 (1982); McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). However, there was no reference to a second sentencing proceeding. The fact that the jury was aware of a sentencing proceeding in 1981 did not lead to the conclusion that there was a second sentencing proceeding simply because the murder occurred in *46 1978. See Teffeteller.[7]
Valle's next claim is that the state improperly cross-examined the defense's expert witnesses as to Valle's prison behavior by questioning them about specific incidents in prison for which he had not been convicted. He also claims error in allowing the state to cross-examine a defense witness about a 1976 incident where Valle allegedly attempted to run over a police officer.
In Hildwin v. State, 531 So.2d 124, 127 (Fla. 1988), aff'd, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), we noted that "there is a different standard for judging the admissibility and relevance of evidence in the penalty phase of a capital case, where the focus is substantially directed toward the defendant's character." We stated that section 921.141(1), Florida Statutes (1987), allowed for broader admissibility of evidence during the penalty phase. Further, we held that
during the penalty phase of a capital case, the state may rebut defense evidence of the defendant's nonviolent nature by means of direct evidence of specific acts of violence committed by the defendant provided, however, that in the absence of a conviction for any such acts, the jury shall not be told of any arrests or criminal charges arising therefrom.
Hildwin, 531 So.2d at 128.
In this case, the defense presented expert opinions that the defendant would be a good prisoner. Under the rationale of Hildwin, it is clear that the state could introduce rebuttal evidence of specific prior acts of prison misconduct and violence. Here, however, the defense experts had formed their opinions from Valle's prison records, including reports of the incidents explored on cross-examination. Valle's experts also used his criminal records as a basis for their opinions, including the transcript from the probation revocation hearing that dealt with the incident where Valle attempted to run over the police officer.[8] Therefore, it was proper to cross-examine the experts concerning these incidents. Parker v. State, 476 So.2d 134 (Fla. 1985); see § 90.705, Fla. Stat. (1987).
We also do not believe the trial judge erred by allowing the state to cross-examine a defense witness about his opinion of Valle's future prison behavior if, hypothetically, he were eligible for parole in fifteen years. The witness had testified to his belief that "lifers" make good prisoners because the prison will always be their home. The state could properly cross-examine him as to whether his opinion would change given the possibility that Valle could be eligible for parole in fifteen years. The state was not trying to establish the possibility of parole as an aggravating factor, but was rebutting the defense's assertion of a mitigating factor. Further, the judge instructed the jury that it should not consider Valle's possible eligibility for parole when recommending a sentence.
Valle correctly asserts that because evidence of lack of remorse is not a statutory aggravating factor, the state improperly introduced in its case-in-chief the testimony of a witness that Valle had shown no remorse over the killing. Robinson v. State, 520 So.2d 1 (Fla. 1988). The error was committed despite the fact that the state could have introduced the same evidence to rebut the testimony of his remorse presented by Valle in mitigation. However, in light of the circumstances of the crime, the weight of the aggravating evidence, and the minimal amount of mitigating evidence, we believe this error was harmless beyond a reasonable doubt.
Valle's next claim is that the prosecutor improperly tried to limit the jury's consideration of proper mitigation. We find no merit to this argument. The judge told the jury that he would instruct them *47 on mitigating factors and that they could consider "anything else that you think is mitigating." The state may properly argue that the defense has failed to establish a mitigating factor and may also argue that the jury should not be swayed by sympathy. The prosecutor in this case did not argue that the law would not allow the jury to consider sympathy in their recommendation. We find no error.
Valle next argues that the judge should not have instructed the jury on, nor found, the aggravating factor that the victim was a law enforcement officer engaged in the performance of his official duties under section 921.141(5)(j), Florida Statutes (1987). Valle argues that the application of this factor violates the prohibition against ex post facto laws. In Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982), this Court considered whether the application of the "cold, calculated, and premeditated" aggravating factor to a crime committed before that factor was enacted violated the ex post facto clause. We determined that the factor could be constitutionally applied to a crime committed before the factor was enacted because the statute only reiterated an element already present in the crime of premeditated murder. Id. at 421. Premeditation was not an entirely new factor.
Similarly, in this case the aggravating factor that the victim was a law enforcement officer who was murdered while performing his official duties is not an entirely new factor, and Valle is not disadvantaged by its application. At the time Valle committed this crime the legislature had established the aggravating factors of murder to prevent lawful arrest and murder to hinder the lawful exercise of any governmental function or the enforcement of laws. §§ 921.141(5)(e), (g), Fla. Stat. (1977). By proving the elements of these two factors in this case, the state has essentially proven the elements necessary to prove the murder of a law enforcement officer aggravating factor. In any event, Valle is not disadvantaged because the trial judge merged these three factors into one aggravating factor.[9]
Valle's next claim is that he is entitled to a new sentencing proceeding because the prosecutor improperly introduced victim impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). We have previously summarized the facts and law of these cases.
In Booth the Supreme Court held that Maryland's requirement that a "victim impact statement" be considered during sentencing violated the eighth amendment. The "victim impact statement" in that case contained extensive information about "the victims' outstanding personal qualities" and "the emotional and personal problems the family members have faced as a result of the crimes." Booth, 482 U.S. at 499, 107 S.Ct. at 2531. The victim impact statement also presented information concerning "the family members' opinions and characterizations of the crimes" including the son's statement that "his parents were `butchered like animals.'" Id. at 508, 107 S.Ct. at 2535. The Supreme Court concluded that "the formal presentation of this information by the State can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." Id. Thus, such information could result in a jury's imposing the death penalty in an arbitrary and capricious manner. Id. at 502-03, 107 S.Ct. at 2532-33.
The Supreme Court again considered Booth error in Gathers. During the sentencing phase closing arguments in Gathers the prosecutor read extensive portions of a printed prayer as well as emphasizing other religious objects and a voter registration card all found in the victim's possession. Gathers, 490 U.S. *48 at 808-10, 109 S.Ct. at 2209-10. The Court held that this argument violated Booth because it focused the jury's attention on the victim's personal qualities and characteristics, factors about which the defendant was unaware. Id. at 811, 109 S.Ct. at 2210-11. The information was not relevant to the circumstances of the crime nor to the defendant's moral culpability. Id. at 811-12, 109 S.Ct. at 2210-11.
Bush v. Dugger, 579 So.2d 725, 727 (Fla. 1991).
We agree that there were some prosecutorial arguments and a little testimony that improperly focused on the loss felt by Officer Pena's family and friends and on Officer Pena's personal characteristics. However, we do not believe that such evidence and arguments were sufficiently prejudicial in their content and quantity to require reversal. They were not comparable to the extensive victim impact evidence and arguments found in Booth and Gathers.
Valle also argues that the judge erroneously applied the cold, calculated, and premeditated aggravating factor to this case. He argues that the facts do not support the heightened premeditation to find that factor. The judge summarized his finding on this factor as follows:
Approximately eight minutes elapsed between the initial stop and the murder of Officer Pena. After the defendant heard the information about the car come on the radio, he returned to his car and told Mr. Ruiz that he would have to waste the officer. He got the gun and concealed it along the side of his leg and slowly walked back to the car. He fired at Officer Pena from a distance of 1 1/2 to 3 feet from the officer, hitting him in the neck. He purposely said "Officer" in order to get a better shot. He then stepped back and shot at Officer Spell. Although he aimed at his head, Officer Spell was able to quickly turn, causing the bullet to strike him in the back. Approximately 2 to 5 minutes elapsed from the time the defendant left Officer Pena's car to get the gun and slowly walk back to shoot and kill Officer Pena.
The Court finds that these actions establish not only a careful plan to kill Officer Pena to avoid arrest, but demonstrate the heightened premeditation needed to prove this aggravating circumstance. This was, without any doubt, an execution-type murder. It was committed without any pretense of moral or legal justification. Officer Pena did nothing to provoke or cause the defendant's actions. This aggravating factor has been proven beyond and to the exclusion of every reasonable doubt. See Jackson v. State, 498 So.2d 406 (Fla. 1986); Eutzy v. State, 458 So.2d 755, 757 (Fla. 1984); Jones v. State, 440 So.2d 570, 577 (Fla. 1983).
We believe these facts were sufficient to sustain a finding that the murder was cold, calculated, and premeditated. See also Swafford v. State, 533 So.2d 270 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989); Phillips v. State, 476 So.2d 194 (Fla. 1985).
Next, Valle contends that the judge did not properly consider the mitigating factors. Valle was found to have an IQ of 127, and his examining psychologist testified that there was no evidence of brain damage or major mental problems. He further said there was no indication of any addiction to drugs or alcohol. Nonetheless, he expressed the opinion that Valle was under the influence of extreme mental or emotional disturbance at the time of the crime and that his ability to conform his conduct to the requirements of law was substantially impaired. He based his opinion upon the stress occasioned by dysfunction within Valle's family as he grew up, his father's harsh discipline, and his own failure to live up to expectations.
The judge referred to this testimony as well as that of a social worker on the subject but concluded that the two statutory mental mitigating factors did not exist. Valle does not quarrel with the rejection of the two statutory mental mitigating factors. He contends that the judge failed to give the testimony weight as nonstatutory *49 mental mitigating evidence. With respect to nonstatutory mitigating evidence, the judge stated in his order:
The defense presented testimony of six expert witnesses to the jury to prove the defendant, if given a life sentence would either be a model prisoner in the future and/or would be a non-violent prisoner, and/or would be a salvageable or rehabilitable prisoner. The Court has considered their opinions, weighed the evidence concerning these witnesses' opinions, as well as the State's evidence in rebuttal. The Court does not find that this mitigating circumstance reasonably exists.
The Court heard testimony from his family, including his sister Georgina, his father and his niece Ann. These witnesses testified concerning his life prior to the murder. This included his lack of love and attention by his parents, the methods his father used to discipline him and life during his teenage years. The Court also heard from witnesses who knew the defendant in high school. The Court additionally heard from the defendant outside the presence of the jury concerning his current remorse over the killing, wherein he accepts full responsibility for his actions.
Considering all the evidence which the defense has presented concerning these circumstances, the Court does not find these circumstances to be relevant mitigating circumstances. Even if they were established, the Court finds that they are outweighed by the aggravating factors.
The mere fact that the judge made no further reference to Valle's mental state at the time of the crime does not mean that the court gave it no consideration. We conclude that the judge considered and properly weighed all relevant mitigating evidence.
We summarily reject Valle's remaining claims, including the following:
1) the state improperly cross-examined a defense psychologist and attacked his character;
2) the trial judge improperly restricted the defense's redirect examination of several witnesses;
3) the trial judge abused his discretion in not allowing the defense to present a witness in surrebuttal; and
4) the prosecutor's closing arguments, concerning the weighing process and the consideration of mercy, constitute reversible error.
Therefore, we affirm Valle's sentence of death.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Valle v. Florida, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986).
[2] §§ 921.141(5)(b), (e), (g), (i), (j), Fla. Stat. (1987).
[3] The state gave the following reasons for challenging the eight jurors:

Juror 1: She appeared unlikely to recommend the death penalty, was either reading or writing something throughout the voir dire examination, and stated that the voice of one of the prosecutors was giving her a headache.
Juror 2: Juror two wore sunglasses and a cap pulled over her head in the courtroom. The prosecutor stated that "[i]f somebody comes into the courtroom wearing sunglasses, that shows me exactly how much respect they have in the court system."
Juror 3: The third juror expressed opposition to imposing the death penalty, stating "I can go for life but won't sign to take it away."
Juror 4: Juror four had also expressed reservations about imposing the death penalty, as well as giving detailed explanations of members of her family who had been in the state prison system and had been represented by the public defender's office.
Juror 5: The fifth peremptorily excused juror had a son who was being prosecuted for thirty counts of grand theft by the state attorney's office. The state also had information that the juror had lied during voir dire.
Juror 6: The sixth juror had also expressed reservations about imposing the death penalty and had a son who had been represented by the public defender's office.
Juror 7: Juror seven did not appear to have the sense or intellectual capacity to understand the case.
Juror 8: The eighth peremptory challenge was exercised because the juror expressed reservations about the death penalty and indicated he had had a son who was a police officer killed in the line of duty.
The prosecutor noted that the jurors who were challenged based on their reservations about the death penalty had not expressed reservations such as to justify challenges for cause.
[4] In any event, we do not believe that Valle showed that it is likely the challenges were used in a racially discriminatory manner. Two blacks served as jurors and a third served as an alternate. Further, the reasons volunteered by the prosecutor for exercising the peremptory challenges appear to be racially neutral. We further note that Valle, himself, is not black. See Kibler v. State, 546 So.2d 710 (Fla. 1989).
[5] Valle does not challenge the finding that, on the merits, the new information does not constitute good cause.
[6] Valle argues that his interpretation of the rule is supported by Mobley v. State, 559 So.2d 1201 (Fla. 4th DCA 1990), and Mitchell v. State, 458 So.2d 819 (Fla. 1st DCA 1984). Those decisions are distinguishable because the jurors misinformed the attorneys in answers to questions asked during voir dire. In this case, the defense attorneys did not ask the venire whether they recognized or knew Officer Pena's family members who were seated in the courtroom.
[7] We also summarily reject Valle's claim that it was error to allow the state to impeach a defense witness, using a permissible method of impeachment, because Valle could not rehabilitate the witness without focusing on the prior sentencing proceeding.
[8] The defense had opened the door for this testimony by questioning their expert witness about this incident on direct examination.
[9] The trial judge did not err by not instructing the jury to merge the three factors when making their sentencing recommendation. Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986).