704 So.2d 500 (1997)
Andrea Hicks JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 87345.
Supreme Court of Florida.
November 6, 1997.
Rehearing Denied January 20, 1998.
*501 Nancy A. Daniels, Public Defender and W.C. McLain, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Andrea Hicks Jackson appeals her death sentence. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we remand for a new sentencing order.
Jackson was convicted and sentenced to death for the 1983 first-degree murder of a Jacksonville police officer. On direct appeal, this Court affirmed her conviction and sentence. Jackson v. State, 498 So.2d 406 (Fla.1986)(Jackson I), cert. denied, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). In 1989, the Governor signed a death warrant, and Jackson filed a 3.850 motion for postconviction relief. The trial court denied the motion. Jackson appealed the denial and *502 petitioned this Court for a writ of habeas corpus. We affirmed the trial court's denial of Jackson's 3.850 motion, but granted her petition for habeas corpus because we concluded that the trial court had erroneously admitted victim impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).[1]Jackson v. Dugger, 547 So.2d 1197, 1198 (Fla.1989) (Jackson II). We vacated Jackson's death sentence and remanded for a new sentencing hearing before a new jury. Jackson II, 547 So.2d at 1201. The trial court again sentenced Jackson to death, and on appeal, this Court vacated the death sentence and remanded for a new sentencing hearing. Jackson v. State, 648 So.2d 85, 92 (Fla.1994) (Jackson III). The Court vacated the sentence a second time because the standard jury instruction given to the jury on the cold, calculated, and premeditated aggravating factor was unconstitutionally vague, and we could not say beyond a reasonable doubt that the invalid instruction did not affect the jury's recommendation. Jackson III, 648 So.2d at 90. On remand, the trial court again sentenced Jackson to death and Jackson filed this appeal.
According to the testimony presented at the resentencing, the murder took place outside Jackson's estranged husband's apartment.[2] Jackson left the apartment and tried to start her car. When her attempts to start the car failed, she began vandalizing the car as well as removing personal items from it. Witnesses testified that they saw Jackson break the windows, remove items from the trunk, remove the battery, pull wires from under the hood, and remove the tag. She took some of the items she removed from the car to her husband's apartment.
Jackson's activity was reported to the police, and Officers Gary Bevel and Burton Griffin responded separately to the disturbance call. Jackson thereafter descended the stairs from her husband's apartment and approached the officers. The officers asked Jackson about the car and Jackson informed them that she owned it. She indicated that she knew who had damaged the car, but did not implicate herself. The officers then asked Jackson to retrieve proof of ownership for the vehicle. Jackson returned to her husband's apartment to obtain the documentation. While Jackson was gone, Officer Bevel began preparing a police report and Officer Griffin left the scene. When Jackson came downstairs again she sat with Officer Bevel in the police car. Witnesses saw the officer and Jackson talking as they sat together in the car. Witnesses also indicated that they saw Officer Bevel writing something. Jackson eventually exited the car and returned to the apartment.
When Jackson returned to the apartment for the second time, her car was towed away and Officer Bevel began to interview witnesses. Two witnesses told Officer Bevel that Jackson vandalized her own vehicle. As the officer discussed the incident with these two witnesses, a third witness saw Jackson exit the apartment and place a gun into her waistband. Jackson then went downstairs and began wandering around Officer Bevel's police car. One of the two witnesses with whom Officer Bevel was speaking saw Jackson reach into the officer's car and look through some papers. She alerted Officer Bevel that Jackson was going into his car.
Officer Bevel approached Jackson and asked what she was doing. Thereafter, he told Jackson she was under arrest for filing a *503 false police report. Before Officer Bevel was able to place Jackson into the back seat of the police car, Jackson lunged at the officer and hit him. A struggle ensued and, as Officer Bevel grabbed Jackson's knees to place her legs into the police car, Jackson dropped her keys and said: "You made me drop my keys." As Officer Bevel retrieved the keys, Jackson fired six shots at the officer four hit his head and two hit his shoulder. Officer Bevel fell on Jackson, who pushed him aside and fled.
Jackson waived down two men in a truck and they offered her a ride. While in the truck, Jackson admitted to having done something she did not want to do. When Jackson saw her friend Joi Shelton, she asked the driver to drop her off. Jackson had called Shelton after she shot the officer and asked Shelton to meet her. Shelton and Jackson drove to Shelton's house where Jackson confessed to Shelton and Shelton's roommate, Shirley Freeman, that she shot a police officer because she did not want to go back to jail. Freeman called the hospital to find out the status of the officer and discovered that he was dead. The next morning, Jackson returned to her husband's apartment where she was subsequently arrested.
At the resentencing, a number of witnesses for the State testified that Jackson did not appear drunk or high at the time of the incident. Jackson, however, presented three mental health experts to establish that she was mentally impaired at the time of the crime. Specifically, she offered the expert testimony to establish mental mitigation as well as rebut the cold, calculated, and premeditated aggravator. The experts all concluded that Jackson was under the influence of drugs and alcohol at the time of the murder. Two of the experts found that Jackson was suffering from post-traumatic stress disorder as a result of extended sexual abuse by her stepfather. The same two experts further concluded that Jackson had a flashback of a prior sexual assault as Officer Bevel struggled with her. The third expert agreed that a flashback was a plausible explanation for Jackson's behavior.
Based on their findings, all three experts opined that the murder did not fit the definition of cold, calculated, and premeditated without any pretense of moral or legal justification. All three also concluded that, at the time of the crime, Jackson's capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of law was substantially impaired and that she was under the influence of extreme mental or emotional disturbance at the time of the crime.
The jury unanimously recommended a sentence of death and the trial judge followed the jury's recommendation. In aggravation, the trial court found that the crime was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.[3] The trial court also found and merged the following three aggravating factors: (1) the crime was committed for the purpose of avoiding or preventing a lawful arrest;[4] (2) the victim was a law enforcement officer engaged in the performance of his official duties;[5] and (3) the crime hindered law enforcement.[6] The trial judge found no mitigating circumstances. He rejected Jackson's claims that the crime was committed while she was under the influence of extreme mental or emotional disturbance and that her capacity to appreciate the criminality of her conduct was substantially impaired. The trial judge also found that the sexual abuse Jackson suffered as a child, the domestic abuse she suffered as an adult, and her substance abuse did not rise to the level of mitigation. The trial judge concluded, however, that even if one or all of these mitigating circumstances existed the sentence would still be death.
Jackson raises eight issues in this appeal: (1) the trial court improperly found that the murder was cold, calculated, and premeditated; (2) the trial court failed to consider, find, and weigh statutory and nonstatutory mitigation contained in the record; (3) the death *504 sentence is disproportionate in this case; (4) the prosecutor made improper arguments in closing; (5) section 921.141(7), which permits the introduction of impact evidence, is unconstitutional; (6) the trial court erred in refusing to admit into evidence a video of Jackson's hypnotic regression; (7) the trial court erred in refusing Jackson's request for a pathologist; and (8) the instruction the trial court gave the jury on the cold, calculated, and premeditated aggravator was unconstitutionally vague.
First, Jackson challenges the trial court's finding that the murder was cold, calculated and premeditated.[7] Jackson argues that, although this Court approved the finding of this aggravator in Jackson I, the Court should reconsider the issue in light of this Court's subsequent decision in Rogers v. State, 511 So.2d 526, 533 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Rogers held that "calculation" consists of a careful plan or prearranged design and receded from Herring v. State, 446 So.2d 1049, 1057 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), to the extent that it held to the contrary. Jackson alleges that pursuant to Rogers, the evidence presented in this case does not support a finding that the murder was calculated beyond a reasonable doubt. Further, she alleges that the evidence presented does not support the remaining elements that must be proven to establish this aggravator. The remaining elements are as follows: (1) the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); (2) the defendant exhibited heightened premeditation (premeditated); and (3) the defendant had no pretense of moral or legal justification. Jackson III, 648 So.2d at 89; see also Jones v. State, 690 So.2d 568, 571 (Fla.1996), cert. denied, ___ U.S. ___, 118 S.Ct. 205, 139 L.Ed.2d 141 (1997); Walls v. State, 641 So.2d 381, 387-88 (Fla.1994), cert. denied, 513 U.S. 1130, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995). After carefully reviewing the facts, we conclude that the trial court did not abuse its discretion in finding that the murder was cold, calculated, and premeditated.
First, we find Jackson's actions were cold. Jackson alleges her actions were not the result of calm and cool reflection because at the time of the murder she was outraged by her predicament, as evidenced by her actions toward her car. When Officer Bevel told Jackson she was under arrest, Jackson alleges, her anger intensified and led her to engage Officer Bevel in a struggle, during which she had a flashback to a sexual assault and shot the officer.
Although Jackson alleges a loss of emotional control, we find there is competent, substantial evidence in the record supporting the trial court's finding to the contrary. Several witnesses testified that in her interactions with Officer Bevel prior to the struggle, Jackson appeared calm. For example, Officer Griffin testified that before the shooting Jackson calmly volunteered her story to and cooperated with the officers. Additionally, we note that Jackson was able to devise a plan to catch Officer Bevel off guard (i.e. dropping her keys). This is not the type of activity performed by a person in a frightened or panicked state. Rather, her actions amounted to an execution-type murder which we have found is by its very nature a "cold" crime. See Walls, 641 So.2d at 388.
With regard to the calculation element, the evidence demonstrated that Jackson carefully planned the murder. Jackson witnessed Officer Bevel filling out the police report as she sat with him in the police car. She then returned to her husband's apartment and placed a gun into her waistband. When Jackson returned downstairs she began looking through the papers in Officer Bevel's car. When Officer Bevel attempted to arrest Jackson, she struck him in the chest where his bulletproof vest was located. She then dropped her keys which gave her the opportunity to shoot the officer in the head.
We find that the facts of the present case, which support this element, are similar to the *505 facts of Valle v. State, 581 So.2d 40 (Fla.), cert. denied, 502 U.S. 986, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991), where this Court found the cold, calculated, and premeditated aggravator valid. In Valle, an officer stopped the defendant for a traffic violation. The defendant sat in the officer's car until the officer began conducting a license plate check. Id. at 43. The defendant then walked back to his car, obtained a gun, and shot the officer. Id. In upholding the cold, calculated, and premeditated aggravator this Court found the facts sufficient to support the trial court's findings. Id. at 48. The trial court in its sentencing order found:
After the defendant heard the information about the car come on the radio, he returned to his car and told Mr. Ruiz that he would have to waste the officer. He got the gun and concealed it along the side of his leg and slowly walked back to the car. He fired at Officer Pena from a distance of 1½ to 3 feet from the officer, hitting him in the neck. He purposefully said "Officer" in order to get a better shot....
The court finds that these actions establish not only a careful plan to kill Officer Pena to avoid arrest, but demonstrate the heightened premeditation needed to prove this aggravating circumstance. This was, without any doubt an execution style murder.... Officer Pena did nothing to provoke or cause the defendant's actions.
Id. at 48. As in Valle, the officer's murder in the instant case was not an afterthought. It was part of a careful plan to kill the officer and avoid arrest. Accordingly, we find that the trial court did not abuse its discretion in finding the calculation element was proven beyond a reasonable doubt.
Next, the evidence in the instant case established that Jackson killed Officer Bevel with heightened premeditation. Jackson, as indicated by her decision to go upstairs and retrieve a gun, made a deliberate and conscious choice to shoot officer Bevel. Jackson could have left the scene, but instead she purposely returned to confront the officer. Jackson did not act on the spur of the moment but rather acted out the plan she had conceived during the extended period in which these events occurred.
As to a pretense of moral or legal justification, Jackson alleges this element was not proven because she perceived Officer Bevel's attempt to arrest her as an attempted rape. In support of her claim, Jackson relies on several cases in which this Court found factual evidence or testimony supported a colorable claim of self-defense. See Christian v. State, 550 So.2d 450 (Fla.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990); Banda v. State, 536 So.2d 221 (Fla.1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989); Cannady v. State, 427 So.2d 723 (Fla.1983). In each of these cases, though, the victim had threatened violence to the defendant and caused the defendant to fear for his life. The same is not true in the instant case where Officer Bevel had not threatened or harmed Jackson. Cf. Arbelaez v. State, 626 So.2d 169, 177 (Fla.1993), cert. denied, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994). Moreover, we note that Jackson's belief that she was about to be raped was purely subjective. We have repeatedly rejected claims that the purely subjective beliefs of the defendant, without more, could establish a pretense of moral or legal justification. Walls, 641 So.2d at 388. Consequently, we find that, unlike the murders that occurred in Christian, Banda, and Cannady, no pretense of legal or moral justification for this murder exists.
Based on the foregoing, we conclude that the trial judge correctly found that the murder was cold, calculated, and premeditated. The trial court did not abuse its discretion in rejecting the expert testimony to the contrary, as that testimony was inconsistent with the facts of this case.
In her second issue, Jackson claims the trial judge failed to consider, find, and weigh unrefuted statutory and nonstatutory mitigation. In particular, Jackson alleges the court failed to consider her mental and emotional condition at the time of the crime as either statutory or nonstatutory mitigation. We find that the trial court's failure to expressly evaluate each mitigating factor as required by Campbell v. State, 571 So.2d 415 *506 (Fla.1990), precludes meaningful review of this issue. In Campbell, we held:
When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature. See Rogers v. State, 511 So.2d 526 (1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The court must find as a mitigating circumstance each proposed factor that is mitigating in nature and has been reasonably established by the greater weight of the evidence: "A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established." Fla.Std.Jury Instr. (Crim.) at 81. The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance. Although the relative weight given each mitigating factor is within the province of the sentencing court, a mitigating factor once found cannot be dismissed as having no weight. To be sustained, the trial court's final decision in the weighing process must be supported by "sufficient competent evidence in the record." Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla. 1981).
571 So.2d at 419 (footnotes omitted). We reiterated our holding in Ferrell v. State, 653 So.2d 367, 371 (Fla.1995), and added that "[t]he absence of any of the enumerated requirements deprives this Court of the opportunity for meaningful review." See also Larkins v. State, 655 So.2d 95, 101 (Fla.1995).
In the instant case, the trial judge made the following findings with regard to mitigation:
The Defendant argued that the two statutory circumstances and one general non-statutory circumstance, all listed below, applied. The Court, however, for the reasons, also listed below, rejects these arguments.
1. The crime for which the Defendant is to be sentenced was committed while the Defendant was under the influence of extreme mental or emotional disturbance. Florida Statutes 921.141(6)(b). The defense suggested the defendant suffered a flashback of a childhood rape. The Court believes this testimony to be non-credible.
2. The capacity of the Defendant to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law was substantially impaired. Florida Statutes 921.141(6)(f). The defense argues that this was due to self induced drugs and alcohol. The Court likewise believes this testimony to be of no significance.
3. Any other aspect of the Defendant's character or record and any other circumstances of the offense. The defendant had a difficult childhood that included sexual abuse and as an adult she suffered domestic violence and abused drugs and alcohol.
Thus, this Court finds no statutory mitigating circumstances, furthermore no aspect of the Defendant's character is sufficient to be of a mitigating nature and no circumstance of the offense appears mitigating. Notwithstanding this, however, the Court concludes, in light of the aggravating circumstances found above, that even if one or all of the suggested mitigating circumstances existed that the Court's sentence would be no different than that announced below.
Contrary to the dictates of Campbell, the trial court's order in this case summarily disposes of the statutory and nonstatutory mitigators. With regard to the statutory mitigators, the sentencing order does not even refer to the testimony of the three experts who all opined that these mitigators existed. Nor does it refer to any evidence to the contrary. Instead, the order indicates without explanation that the trial court found all the testimony offered in support of the statutory mitigators noncredible. We have recognized that a trial court may reject expert opinion testimony even if that testimony is unrefuted. See, e.g., Walls, 641 So.2d at *507 390-91. However, a more thorough explanation as to why the court rejected the expert testimony is necessary here where three experts, including an expert who often testifies for the State, found these mitigators to exist.
The sentencing order also fails to adequately address the nonstatutory mitigating circumstances. The order merely lists the nonstatutory mitigators before rejecting them. The order should address the relevant testimony and explain why the experts' testimony, in conjunction with the testimony of Jackson's family and friends, does not support the nonstatutory mitigators the court rejects. Additionally, because the court rejects the statutory mental mitigators, the order should explain why the evidence offered by the experts does not amount to nonstatutory mental mitigation.
To ensure meaningful review in capital cases, trial courts must provide this Court with a thoughtful and comprehensive analysis of the mitigating evidence in the record. See Walker v. State, 22 Fla. L. Weekly S537, S544, ___ So.2d ___, ___, 1997 WL 539438 (Fla. Sept. 4, 1997). Because the instant sentencing order does not meet that requirement, we remand to the trial court for a reweighing and resentencing to be conducted within 120 days. We direct the trial court to reweigh the aggravating and mitigating circumstances, and if the trial court again determines that death is the appropriate penalty, the court must prepare a sentencing order that expressly discusses and weighs the evidence offered in mitigation in accord with Campbell, Ferrell, and their progeny.[8] Because we remand for a new sentencing order we do not address proportionality. We do however address the remaining issues Jackson raises.
In her fourth claim, Jackson alleges the prosecution made improper arguments regarding the merged aggravator. Her claim is twofold. First, she alleges that the prosecutor essentially told the jury that the merged aggravator was entitled to enhanced weight because it was based on three statutory aggravating circumstances. We disagree with Jackson's interpretation of the prosecutor's argument. The prosecutor specifically stated: "So what I submit to you, even though all three of these aggravators have to be merged, that this aggravator has got so much weight that no matter how much mitigation you believe this aggravator alone will outweigh it." Thus, the prosecutor's argument regarding the weight of this aggravator was not based upon the fact that the aggravator consisted of three merged aggravators. Moreover, we note that the jury was properly instructed that if it found any or all of the law-enforcement aggravators, it would have to treat them as a single aggravating circumstance because the same aspect of the offense was being used to justify all three factors.
Jackson further alleges that the prosecutor encouraged the jury to base its sentencing decision on the need to send a law and order message to the community. We have carefully reviewed the record and we do not find the prosecutor's comments amounted to error. Even if we were to find error, we would not find a new sentencing hearing warranted because the comments were not so outrageous as to taint the validity of the jury's recommendation. See Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985); cf. Campbell v. State, 679 So.2d 720, 724-25 (Fla.1996).
Next, Jackson challenges the constitutionality of the victim impact evidence introduced in the penalty proceeding. We have in the past rejected the contention that the introduction of victim impact evidence pursuant to section 921.141(7), Florida Statutes (1995), violates a defendant's constitutional rights. See Windom v. State, 656 So.2d 432, 438 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995). Accordingly, we find Jackson's claim to be without merit.
Jackson next argues that the trial judge erred in refusing to allow into evidence the video of her hypnotic regression performed *508 by Dr. Charles Mutter, a defense expert. As in Jackson's prior sentencing proceeding, much of Dr. Mutter's testimony was based upon his hypnotic regression of Jackson. In Jackson III, we addressed this issue at length and determined the trial court did not abuse its discretion in denying admittance. 648 So.2d at 90-91. After reviewing the record in this most recent sentencing proceeding, we reach the same conclusion.
In her seventh claim, Jackson challenges the trial court's refusal to allow the defense to hire a pathologist. Jackson alleges that her request should have been granted pursuant to section 914.06, Florida Statutes (1995), because the victim's position at the time of the shooting was relevant to the State's theory regarding the cold, calculated, and premeditated aggravator. She maintains that without the benefit of a defense pathologist she was unable to adequately cross-examine the State's pathologist regarding the victim's position. The appointment of an expert pursuant to section 914.06, however, is discretionary and we do not find that the trial court abused its discretion in denying Jackson's request where any additional information a second pathologist could have offered in this particular case was merely speculative and most likely cumulative. See Martin v. State, 455 So.2d 370 (Fla.1984).
Finally, Jackson challenges the constitutionality of the cold, calculated and premeditated instruction. The instruction given was approved by this Court in Jackson III. Despite our approval, Jackson contends that the instruction remains inadequate. We disagree and therefore reject Jackson's final claim.
For the reasons set forth herein, we vacate Jackson's sentence and remand to the trial court to reweigh the aggravating and mitigating circumstances and resentence Jackson in compliance with Campbell and its progeny.
It is so ordered.
SHAW, GRIMES, HARDING and WELLS, JJ., concur.
KOGAN, C.J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., concurs.
OVERTON, J., concurs in result only.
KOGAN, Chief Justice, concurring in part and dissenting in part.
I concur with the majority's resolution of all the issues, except its holding with respect to the cold, calculated and premeditated aggravator. I respectfully dissent from the majority's holding that the evidence offered was sufficient to support a finding that the murder was cold, calculated, and premeditated. Accordingly, I would reverse and remand with the additional instruction that the trial court not consider the cold, calculated, and premeditated aggravator in reweighing the aggravating and mitigating circumstances.
The majority correctly recognizes that the State must prove all four elements of the cold, calculated, and premeditated aggravator beyond a reasonable doubt. However, the majority mistakenly concludes that the State has met its burden. I find, as I did in my specially concurring opinion in Jackson III, that the State failed to prove that the murder was calculated. As I stated in Jackson III:
There is no evidence Jackson was aware that she was about to be arrested when she retrieved her gun from her estranged husband's apartment; nor is there any evidence she took the gun for the purpose of shooting the police officer. There was testimony that Jackson usually carried the gun with her for protection and on the day of the shooting she had taken it to her husband's apartment. It is just as likely that Jackson, who did not live with her husband, returned to the apartment the third time to get her personal belongings so she could leave, as it is that she returned to get her gun so she could shoot the officer. There is no evidence that Jackson became aware of her impending arrest until she left the apartment the third time and was informed that she was under arrest and the struggle ensued.

*509 There was no reason for Jackson to devise a plan to shoot Officer Bevel. After the officer took Jackson's statement, Jackson was allowed to freely come and go from her estranged husband's apartment, during which time the officer had Jackson's car towed away and continued his investigation. Jackson could have left the scene at anytime prior to being informed of her arrest. Moreover, if Jackson had planned to shoot the officer when she retrieved her gun from her husband's apartment, it makes no sense that she would wait until the officer had her by the legs attempting to place her in the patrol car. She easily could have shot the unsuspecting officer before the struggle ensued or immediately after she was informed of her arrest. Jackson's statement that she "killed a cop" because he was "trying to arrest her" is just as consistent with a spur of the moment decision to shoot the officer as he attempted to put her in the patrol car as it is with a prearranged plan to kill the officer in order to avoid arrest.
Jackson's statement that the officer made her drop her keys likewise was not necessarily part of a prearranged plan to distract the officer so Jackson could shoot him. Based on the evidence, Jackson's keys may have actually fallen during the struggle, providing the opportunity for Jackson's escape. This scenario is supported by the testimony that eyewitnesses heard what appeared to be keys dropping, as the officer was attempting to put Jackson's legs in the car.
Even if Jackson had the presence of mind while struggling with the officer to devise a method to catch him off guard and shoot him, this alone is insufficient evidence of a careful plan or prearranged design to kill Officer Bevel.
648 So.2d at 93 (Kogan, J., concurring specially). There is not any evidence in the instant record that leads me to a contrary conclusion. Additionally, I maintain that Valle v. State, 581 So.2d 40 (Fla.), cert. denied, 502 U.S. 986, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991), on which the majority relies, is distinguishable. The evidence in Valle, unlike the evidence in the instant case, clearly depicts the defendant's careful plan to kill a law enforcement officer in order to avoid arrest. In my opinion, the record in the instant case only establishes a suspicion that a plan existed. A suspicion that a plan existed is insufficient to support this aggravator. See Besaraba v. State, 656 So.2d 441, 446 (Fla.1995).
I further conclude that the State failed to prove that this murder was cold. To meet the cold element the killing must be the product of cool and calm reflection rather than an act prompted by emotional frenzy, panic, or a fit of rage. Richardson v. State, 604 So.2d 1107, 1109 (Fla.1992). In the instant case, the trial judge found that the shooting was carried out with the same measure of coolness as was the stripping of the car. The record reflects, however, that neither the stripping of the car nor the shooting of the officer was the product of calm and cool reflection.
The record reflects that on the day of the shooting, Jackson had been taking various drugs and drinking alcohol. Jackson, who was at that time basically homeless, had come to visit her estranged husband and her children. Jackson was distraught over family matters when she left her estranged husband's apartment. When her car would not start she began to vandalize it. Two witnesses testified that Jackson was highly agitated, in a state of anger, and cursing at the car as she vandalized it. Another witness testified that Jackson was very irate and belligerent to the officer when she discovered her car had been towed. When she discovered she was under arrest, she lunged at the officer and struggled with him. Her actions support the finding that the shooting was a spur-of-the-moment reaction and the culmination of built up anger and rage rather than the fruition of a cool and calmly reflected plan.
Moreover, I note that the record is replete with expert testimony that seems to negate the cold element. Cf. Spencer v. State, 645 So.2d 377 (Fla.1994) (finding evidence offered in support of the mental mitigating circumstances negated the cold element of the cold, calculated, and premeditated aggravator). For instance, two experts opined that Jackson, *510 as a result of being raped as a child, perceived the officer's attempt to arrest her as an attempted rape. The trial court did not address this expert testimony in rejecting the cold, calculated, and premeditated aggravator or in rejecting the mitigating circumstances raised by Jackson. In remanding, the majority gives the trial court an opportunity to explain why the expert testimony is, as the trial court contends, not credible with regard to the mitigating circumstances. While I do not find the cold, calculated, and premeditated aggravator applicable here, I believe the majority at the very least should, as it did with the mitigating factors, require the trial court to elaborate on its finding that the murder was cold, calculated, and premeditated so as to comply with Campbell and its progeny. In my opinion, the trial court's findings should at least explain why the court rejects the testimony of three experts who concluded that the murder was not cold, calculated, and premeditated.
ANSTEAD, J., concurs.
ANSTEAD, Justice, concurring in part and dissenting in part.
I fully concur in Chief Justice Kogan's opinion demonstrating that this tragic and emotionally charged murder was not committed in a cold, calculated and premeditated manner.[9] The majority opinion speaks for itself in describing the bizarre episode during which the tragic shooting took place. The testimony of two eyewitnesses presented by the State, Anna Nelson and Leanderaus Fagg, is illustrative. Nelson described the appellant's actions as irrational and testified that Jackson was visibly angry at her car and virtually destroyed it. Jackson also cursed the car. Nelson also testified that when Officer Bevel told Jackson she was under arrest, Jackson got angry and "lunged toward [Officer Bevel] and was like hitting him up in his chest." Fagg testified that Andrea approached Officer Bevel and "came up and hostileshe say, `where do you take my god damn car'," and said the situation between appellant and the officer was "hostile." Fagg heard the appellant say to the officer: "I told you don't take my god damn car nowhere." When Officer Bevel advised appellant she was under arrest, the appellant struggled and resisted violently and was in Fagg's words, "immensely hot and angry." Against this backdrop, the majority asks us to accept that a police officer who had the misfortune of being randomly called to this bizarre and emotionally charged scene, was the victim of a cold, calculated and highly premeditated murder.
There are numerous cases where we have rejected a CCP finding under similar circumstances. In Thompson v. State, 565 So.2d 1311 (Fla.1990), we stated:
Many times this Court has said that section 921.141(5)(i) of the Florida Statutes (1987), requires proof beyond a reasonable doubt of "heightened premeditation." We adopted the phrase to distinguish this aggravating circumstance from the premeditation element of first-degree murder. See, e.g., Hamblen v. State, 527 So.2d 800, 805 (Fla.1988); Rogers v. State, 511 So.2d 526, 533 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Heightened premeditation can be demonstrated by the manner of the killing, but the evidence must prove beyond a reasonable doubt that the defendant planned or prearranged to commit murder before the crime began. Hamblen, 527 So.2d at 805; Rogers, 511 So.2d at 533. See, e.g., Koon v. State, 513 So.2d 1253 (Fla.1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1124, 99 L.Ed.2d 284 (1988).

*511 The state relies heavily on the fact that Thompson awoke at 8 a.m. and killed the victim at 8:30 a.m., arguing that Thompson had thirty minutes to think about what he was doing before he killed Place. But there is no evidence in the record to show that Thompson contemplated the killing for those thirty minutes. To the contrary, the evidence indicates that Thompson's mental state was highly emotional rather than contemplative or reflective. It is an equally reasonable hypothesis that Thompson hit his breaking point close to 8:30 a.m., reached for his gun and knife, and killed Place instantly in a deranged fit of rage. "Rage is inconsistent with the premeditated intent to kill someone," unless there is other evidence to prove heightened premeditation beyond a reasonable doubt. Mitchell v. State, 527 So.2d 179, 182 (Fla.), cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988).
Id. at 1317-18. Similarly, in Garron v. State, 528 So.2d 353 (Fla.1988), we again emphasized that CCP was meant to apply to killings that can be characterized as "execution or contract-style killings":
The final aggravating factor, that the offense was committed in a cold, calculated, and premeditated manner, is also without support. There is no evidence of heightened premeditation with respect to the shooting of Tina Garron. While it is true that appellant hid the gun in a towel before he shot Le Thi, he did not do so when he shot Tina. It appears the shooting of Tina was a spontaneous reaction. As the state admits in its brief, the heightened premeditation aggravating factor was intended to apply to execution or contractstyle killings. This case involves a passionate, intra-family quarrel, not an organized crime or underworld killing.

Id. at 360-61 (emphasis supplied). Measured against these standards, the majority's attempt to artificially construct a CCP scenario for this case simply falls of its own weight. For example, the majority has the defendant going back to her estranged husband's apartment to get a gun (a circumstance not supported by the evidence) before the alleged motive for the murder, her arrest, even took place. As illustrated by the state's evidence discussed above, there is simply no way that you can fit the CCP aggravator with the undisputed facts of this case.
KOGAN, C.J., concurs.
NOTES
[1] In Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), the United States Supreme Court receded from Booth holding that:

[I]f the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.
After Payne, Florida chose to allow the admission of victim impact evidence. Section 921.141(7), Florida Statutes (1995), which permits victim impact evidence to be heard in capital sentencing proceedings, is now applicable to the instant case. A victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence, however, remain inadmissible. Payne, 501 U.S. at 830 n. 2, 111 S.Ct. at 2611 n. 2.
[2] Jackson and her husband were separated.
[3] § 921.141(5)(i), Fla. Stat. (1995).
[4] § 921.141(5)(e), Fla. Stat. (1995).
[5] § 921.141(5)(j), Fla. Stat. (1995).
[6] § 921.141(5)(g), Fla. Stat. (1995).
[7] Jackson also alleges that the cold, calculated, and premeditated instruction should not have been given to the jury. Our analysis and holding with regard to the trial courts's finding of the cold, calculated, and premeditated aggravator is dispositive of this related issue.
[8] For examples of sentencing orders that comply with Campbell and its progeny, we direct the trial court to the materials that accompany the 1997 Handling Capital Cases Course. Appendices A and B in the section titled "Conducting the Penalty Phase of a Capital Case" provide two examples of acceptable sentencing orders.
[9] I agree that the trial court failed to properly consider and evaluate the mitigating evidence. In Ellis v. State, 622 So.2d 991, 1001 (Fla.1993), we stated for the umpteenth time:

Second, the trial court in any penalty phase on remand is directed to expressly find, consider, and weigh in its written sentencing order all mitigating evidence urged by Ellis, both statutory and nonstatutory, apparent anywhere on the record in keeping with the analysis developed by this Court in Rogers v. State, 511 So.2d 526 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), Campbell v. State, 571 So.2d 415 (Fla.1990), Santos v. State, 591 So.2d 160 (Fla.1991), and their progeny.
The trial court's order here does not comply with this clear and direct holding.